**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ROSARY BERTUZZI,

                            Plaintiff,

          -against-

COPIAGUE UNION FREE SCHOOL DISTRICT,
BOARD OF EDUCATION OF COPIAGUE UNION
FREE SCHOOL DISTRICT, DR. KATHLEEN
BANNON, TODD ANDREWS, and MICHELLE
BUDION, Individually, and as Aiders and Abettors,

                          Defendants.
------------------------------------------------------------X

                                    **REPORT AND**
                                    **RECOMMENDATION**

                                CV 17-4256 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

     **I.**    <u>P<small>RELIMINARY</small> S<small>TATEMENT</small></u>

On July 18, 2017, Rosary Bertuzzi ("Bertuzzi" or "Plaintiff") commenced this action

against Copiague Union Free School District (the "District"), the Board of Education of

Copiague Union Free School District (the "Board"), Superintendent Kathleen Bannon

("Superintendent Bannon" or "Bannon"), Assistant Superintendent for Human Resources Todd

Andrews ("Assistant Superintendent Andrews" or "Andrews"), and District Coordinator of

Foreign Language Michelle Budion ("Foreign Language Coordinator Budion" or "Budion")

(collectively, "Defendants").[1]  Plaintiff claimed violations of her constitutional, statutory, and

common law rights, including employment discrimination.  *See* Compl. [DE 1].  Subsequently,

---

[1]    The Court notes that Plaintiff names Joseph Agosta ("Principal Agosta" or "Agosta"),
principal of Walter G. O'Connell Copiague High School, in the "Parties" section of the
Complaint, but does not name Agosta in any cause of action set forth thereafter.  *See* Compl.
¶¶ 6, 102-200.  Nor is Agosta named in the caption.

Plaintiff filed the First Amended Verified Complaint ("Amended Complaint"), the operative pleading here, on August 16, 2018.  *See* Am. Compl.  [DE 26].  The Amended Complaint sets forth numerous federal and state causes of action, namely, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; the Due Process Clause of the Fifth and Fourteenth Amendments; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq.*; and the New York State Constitution.  *See generally id*.

Presently before the Court, on referral from Judge Feuerstein for a report and recommendation, is Defendants' Motion to Dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

For the reasons which follow, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    Factual Background

Unless otherwise noted, the following facts are drawn from the Amended Complaint and are accepted as true for purposes of the instant motion.

Plaintiff has been employed by the District as a foreign language teacher since September 1986.  Am. Compl. ¶ 16.  In 1998, Plaintiff suffered severe injuries in connection with a car accident which resulted in several disabilities, including, *inter alia,* chronic intractable neck pain from a cervical disc disorder, degenerative disc disease and herniated discs.  *Id.* ¶¶ 17-18. Plaintiff alleges that her disabilities are "chronic" and "permanent" "medical impairments" which affect and limit her major life activities and prevent her from performing a variety of tasks centrally important to her life.  *Id.* ¶¶ 74-75.  According to Plaintiff, her disabilities "cannot be

completely corrected by medicine or devices" and the conditions are exacerbated by repeated, consistent, and persistent activity, such as moving in "small spurts on a consistent basis" throughout the school year.  *Id.* ¶¶ 20, 75-76.

Plaintiff maintains that she is a qualified individual with a disability covered under the ADA and NYSHRL and that she has been able to perform the essential functions of her position with reasonable accommodation at all relevant times.  *Id.* ¶¶ 25, 78, 80, 81, 159.  Her treating physicians have clearly and repeatedly advised the District that she "is more than capable of performing the essential functions of her position" if she is permitted to teach and prepare lessons in a single classroom.  *Id.* ¶ 21

Plaintiff alleges that since her injuries in 1998, the District has engaged in a discriminatory pattern and practice of refusing to provide her with reasonable accommodation. *Id.* ¶ 22.  The Amended Complaint states that "almost every year since [she] first requested reasonable accommodation . . . as prescribed by her medical professionals, the District has refused to provide it and/or taken retaliatory action . . . for her [] requests."  *Id.* ¶ 23.  Plaintiff highlights the following alleged retaliatory acts:  (1) reassigning her to a classroom requiring excessive walking while pushing a materials cart; (2) denying her extra compensation and advancement opportunities; (3) disposing of her teaching materials; (4) making disparaging remarks about her disabilities during year-end evaluations; (5) creating baseless allegations about her; (6) intimidating her; and (7) making discriminatory comments about her based on her need for reasonable accommodation.  *Id.* ¶ 26.

According to the Amended Complaint, the District required the Plaintiff to submit medical documentation concerning her disabilities on an annual basis.  However, Defendants refused to timely provide her with reasonable accommodation, acquiescing only when threatened

3

with legal action.  *Id.* ¶¶ 28-29.  Plaintiff alleges that Defendants followed this pattern each year, including 2013, 2014 and 2015, further exacerbating her disabilities in an effort to constructively discharge her or force her to retire.  *Id.* ¶ 30-34.  The specific discriminatory and retaliatory acts alleged for the 2014-2015, 2015-2016, 2016-2017, and 2017-2018 school years follow here.  *See generally* Am. Compl.

### 1.   *2014-2015 School Year*

Up to and throughout the 2014-2015 school year, Plaintiff alleges that she was harassed in retaliation for requesting reasonable accommodation, including being assigned a "disproportionately high number of learning disabled, delinquent, and/or remedial students relative to other similarly situated non-disabled foreign language teachers."  *Id.* ¶ 36.

### 2.   *2015-2016 School Year*

During the 2015-2016 school year, Plaintiff asserts that Defendants denied her request for reasonable accommodation and rejected her efforts to engage in an interactive process, without explanation.  *Id.* ¶¶ 39-40.  Plaintiff contacted Superintendent Bannon and threatened legal action, after which the District "targeted [Plaintiff] by engaging in informal and unannounced observations/evaluations of her teaching performance, purportedly in violation of the Collective Bargaining Agreement between the teachers' union and the District (the "CBA")."  *Id.* ¶¶  41-43.

Plaintiff alleges that in or around late 2015, former high school Assistant Principal Jeffrey Myers ("Assistant Principal Myers" or "Myers") conducted one such observation of her teaching performance in order to intimidate and harass her.  *Id.* ¶ 44.  Myers did not inform Plaintiff that she had been observed nor did he provide any feedback, constructive or otherwise. *Id.*  Plaintiff further claims that in or around January of 2016, Assistant Principal Myers observed her for an entire period from a chair in Plaintiff's classroom.  *Id.* ¶ 45.  Myers advised that his

4

visit had been an "unannounced, informal observation" and that he had rated Plaintiff "ineffective." *Id.* ¶ 45. Pursuant to the CBA, an "unannounced, informal observation" should last only ten minutes and should be conducted as a "walk-through." *Id.* Assistant Principal Myers' "ineffective" rating was ultimately expunged from Plaintiff's record since the visit was conducted in contravention of the CBA. *Id.* ¶ 47. Plaintiff asserts that Myers' 2016 observation was conducted in order to create a pretextual reason to terminate and/or discipline her in retaliation for her request for reasonable accommodation and to create a hostile work environment in an ongoing effort to force her to resign or retire. *Id.* ¶¶ 48-49.

In sum, Plaintiff contends that she was evaluated on four separate occasions, including evaluations by Principal Agosta and/or Foreign Language Coordinator Budion. *Id.* ¶¶ 51-52. According to Plaintiff, other similarly situated non-disabled teachers are not evaluated more than twice during a given school year pursuant to District policy and practice. *Id.* ¶ 51-54. Plaintiff maintains that Defendants' departure from District policy and practice was a purposeful attempt to (1) create a pretextual reason to terminate and/or discipline her because of her disability, (2) create a hostile workplace, and/or (3) in retaliation for her requesting reasonable accommodation. *Id.* ¶ 53. Despite Defendants' alleged effort to create a pretext for discipline and/or termination, Plaintiff states that she was found to be "effective" in her Annual Professional Performance Review. *Id.* ¶ 55.

### 3.    *2016-2017 School Year*

During the summer of 2016, Plaintiff again submitted materials from her treating physicians documenting her disabilities and stating that she was medically able to perform the functions of her position with the reasonable accommodation of a single classroom in which to teach and prepare. *Id.* ¶¶ 57-58. In July 2016, Plaintiff received her 2016-2017 teaching

schedule, according to which she was required to (1) "unnecessarily" switch classrooms with another teacher in the middle of the day and (2) lift or push a cart containing heavy materials. *Id.* ¶¶ 59-60.  Plaintiff asked Principal Agosta to amend her schedule but she was altogether ignored.  *Id.* ¶¶ 60-62.  Plaintiff points out that in previous school years, the District had allowed her to prepare and teach in a single classroom as a reasonable accommodation.  *Id.* ¶ 68. According to Plaintiff, the District implemented the new schedule to harass, discriminate, and retaliate against her, "knowing that it would exacerbate Plaintiff's disability and/or cause [her] to become permanently disabled, thereby forcing [her] to retire."  *Id.* ¶ 63.

Since she was unable to teach and prepare in a single classroom, Plaintiff says she was forced to prepare her lessons in the Languages Other Than English ("LOTE") room.  *Id.* ¶¶ 64-66.  On September 6, 2016 – the first day of classes for the 2016-2017 school year – Plaintiff says she fell while preparing in the LOTE room, severely exacerbating her disabilities. *Id.* ¶ 69.  She claims that "but for the [D]efendants' willful, knowing, and intentional failure to provide [her] with the reasonable medical accommodation prescribed by her treating medical professionals, she would not have fallen, and her disabilities would not have become exacerbated."  *Id.* ¶71.  Plaintiff further asserts that as a result of Defendants' intentional discriminatory acts, she has been subjected to intentional infliction of emotional and physical distress.  *Id.* ¶ 72.

Although she sought to engage in an interactive process, which Defendants rejected, Plaintiff says she was placed on Family and Medical Leave retroactively and prematurely, causing her to lose accrued sick days.  *Id.* ¶ 73.  During the 2016-2017 school year, she made multiple requests to return to her normal duties, all of which were ignored or summarily denied by Defendants.  *Id.* ¶ 85.  As a result, Plaintiff states that she was forced to utilize sick days for

which she would have otherwise been compensated. *Id.* By forcing her to exhaust earned and accrued sick leave, Plaintiff says Defendants prevented her from being compensated for contractual compensation without due process. *Id.* ¶¶ 94-95.

Following her September 6, 2016 injury, Plaintiff notified the District through counsel that she wished to return to work as soon as medically possible. *Id.* ¶ 88. Counsel for the District advised Plaintiff in April 2017 that the District required medical clearance from Plaintiff's treating physicians. *Id.* ¶ 89. Plaintiff's counsel responded that Plaintiff "is medically cleared to return to work on April 24, 2017, so long as she [is] provided the same previously stated reasonable accommodation that her disabilities require." *Id.* ¶ 90. According to Plaintiff, the District refused to accommodate her in an attempt to force her to retire or resign. *Id.* ¶¶ 87-94.

Plaintiff alleges that the District further discriminated and retaliated against her by posting her teaching position as vacant on a job posting website. *Id.* ¶¶ 96-97. In addition, Plaintiff claims that she was discriminated against at a teachers' conference on May 26, 2017. *Id.* ¶¶ 98-99. When Plaintiff appeared for the conference, she was informed that she should not have appeared and was separated from her department. *Id.* ¶ 100.

### 4.    *2017-2018 School Year – After the Instant Lawsuit Was Filed*

Prior to the commencement of the 2017-2018 school year, Plaintiff provided the District with medical documentation from her treating physicians advising that her disabilities required a reasonable accommodation in the form of a single classroom in which to teach and prepare lessons. *Id.* ¶ 115. According to Plaintiff, Defendants refused to provide her with her requested accommodation and failed to engage in any interactive process. *Id.* ¶¶ 116, 121. During the 2017-2018 school year, Plaintiff returned to work as a Foreign Language Teacher without any

reasonable accommodation. *Id.* ¶¶ 102-03. Upon Plaintiff's return, Defendants continued their campaign of discrimination, retaliation, and harassment, "engag[ing] in material and severe disparate treatment, retaliation, and discriminatory" acts in an effort to force Plaintiff to resign or retire. *Id.* ¶¶ 105-08.

Plaintiff was issued a new teaching schedule which required her to move to a different classroom every period. *Id.* ¶¶ 109-110. Defendants directed her not to store her materials in any of her classrooms, yet "many similarly situated non[-]disabled teachers . . . teach all of their teaching periods in a single classroom," storing their teaching materials in the same classroom in which they teach. *Id.* ¶¶ 113-14, 126. Plaintiff further states that the classrooms in which she teaches are used by teachers who teach all their periods in those classrooms. *Id.* ¶ 125. She maintains that the new schedule was designed to exacerbate her disabilities and constructively discharge her. *Id.* ¶ 122.

Further, on or about October 24, 2017, Plaintiff claims that she was harassed by Assistant Principal Remenick. *Id.* ¶ 134. During her first-period class that day, Plaintiff disciplined a student who was being defiant and disrespectful. *Id.* ¶ 129. She called security to have the student removed from the class, whereupon a security officer arrived with Mr. Remenick. *Id.* ¶¶ 130-31. According to Plaintiff, Mr. Remenick reprimanded her in the presence of the student, the student's aide, and other personnel, stating that Plaintiff "had problems" and was at fault. *Id.* ¶¶ 132-33.

Defendants have continued to give Plaintiff undesirable and discriminatory assignments as part of a plan to constructively discharge her, including: (1) assigning her a disproportionate number of remedial, delinquent, or special needs students; (2) targeting her with observations and evaluations regarding her teaching performance and holding her to higher standards than

8

other similarly situated non-disabled teachers; (3) requiring her to work with the Spanish 1

program and middle school teachers instead of the rest of the Italian department; and (4)

directing her to clean out a lateral filing cabinet, as a result of which Plaintiff suffered

excruciating pain.  *Id.* ¶¶ 136-45.

      Generally, Plaintiff contends that each of Defendants' discriminatory acts was committed

in willful retaliation against her for filing the instant lawsuit.  *Id.*  According to Plaintiff, "[b]y

letter dated February 19, 2018, Plaintiff's treating spinal specialist, Laurence E. Mermelstein,

M.D., [notified] [D]efendants that, as a result of the exacerbation of her disabilities, [Plaintiff]

would have to miss work 'because the workplace is ignoring the recommendation of this

office.'"  *Id.* ¶ 148.  Plaintiff states that "as predicted by [her] treating medical professionals,"

Defendants' acts have severely exacerbated her disabilities.  *Id.* ¶ 149.  Finally, Plaintiff states

that she has notified the District of her retirement, effective June 2018, and that she would not

have retired but for Defendants' ongoing pattern and practice of pervasive harassment,

discrimination, retaliation, and refusal to accommodate.  *See id.* ¶ 159.

### B.    Procedural History

      On November 17, 2016, Plaintiff concurrently filed a charge of discrimination with the

New York State Division of Human Rights ("NYSDHR") and the Equal Employment

Opportunity Commission ("EEOC").  *Id.* ¶ 13.  The EEOC granted Plaintiff's request to

administratively dismiss her charges on June 15, 2017 so that she could pursue litigation.  The

agency issued Plaintiff a "right-to-sue" letter.  *Id.* ¶ 14; *see* EEOC Dismissal and Notice of

Rights, annexed as Exhibit 1 to the Amended Complaint.  Thereafter, on July 18, 2017, Plaintiff

commenced the current action by filing the Initial Complaint, setting forth ten causes of action.

*See* Compl.  Defendants moved to dismiss the Initial Complaint on December 27, 2017 for

failure to state a claim and for lack of jurisdiction.  *See* Defendants' First Notice of Motion to

Dismiss [DE 12].   On March 26, 2018, Judge Feuerstein referred Defendants' December 27,

2017 motion to this Court for a report and recommendation.  *See* March 26, 2018 Referral Order.

Shortly thereafter, on April 12, 2018, Plaintiff moved to amend the Initial Complaint.  *See*

Plaintiff's First Motion to Amend [DE 21].  The Court conducted a status conference with the

parties on August 9, 2018 at which time the parties agreed that:  (1) Defendants' December 27,

2017 motion to dismiss would be deemed moot; (2) Plaintiff would be permitted to file the

Amended Complaint; and (3) Defendants' right to move to dismiss the Amended Complaint

would be preserved.  *See* August 9, 2018 Civil Conference Minute Order [DE 24].  In addition,

the Court set a briefing schedule for Defendants' anticipated motion to dismiss the Amended

Complaint.  *See id*.  Pursuant to the Court's Scheduling Order, Plaintiff filed the Amended

Complaint on August 16, 2018, and Defendants' Motion to Dismiss the Amended Complaint

was fully briefed on October 29, 2018.   Judge Feuerstein then referred Defendants' motion to

this Court for a report and recommendation as to whether the motion should be granted.

## III.   DISCUSSION

### A.   Applicable Legal Standards

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally

construe the claims, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New*

*Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility'

standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be

10

supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

With this standard in mind, the Court now turns to the Plaintiff's claims.

**B.    ADA Claims**

In her first cause of action, Plaintiff asserts a variety of claims under the ADA. *See* Am. Compl. ¶¶ 160-66. Although Plaintiff fails to expressly identify any particular causes of action, the Court construes Count I as setting forth claims for discrimination, reasonable accommodation, retaliation, and hostile work environment. *Id*. The Court considers each in turn below.

### 1.    *ADA Disability Discrimination Claim*

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

11

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such . . . employee." 42 U.S.C. § 12112.

Disability discrimination is analyzed under the three-part, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000) (ADA claims are evaluated under the *McDonnell Douglas* framework). Under the *McDonnell Douglas* framework: (1) the plaintiff must first establish a prima facie case of discrimination, after which (2) the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for their actions, whereupon (3) the burden the shifts back to the plaintiff to prove that discrimination was the true reason behind the Defendants' actions. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

In order to make out a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) her employer is subject to the ADA; (2) she was a person with a disability within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Morris v. Town of Islip,* No. 12–CV–2984, 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014); *see Shannon v. N.Y.C. Transit Auth.,* 332 F.3d 95, 99 (2d Cir.2003) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir. 1998)).

12

"However, the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*.'" *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011)); *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014). "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Gonzalez v. Carestream Health, Inc.*, 520 Fed. App'x 8, 9-10 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace discrimination . . . need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . .").

Instead, "[the Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez*, 520 Fed. App'x at 10 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In other words, the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case. Thus, the standard is simply whether a plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231 (same); *Friel*, 947 F. Supp. 2d at 251 (same); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest."). In the causation context, this means the Plaintiff need only allege a set of facts which makes it "plausible" that the Plaintiff's

13

disability was a "motivating factor" in the adverse employment action.  *Fanelli*, 51 F .Supp. 3d at 232.

Here, Defendants do not contest, and the Court is satisfied, that Plaintiff has sufficiently pleaded that (1) Plaintiff's employer is subject to the ADA, (2) Plaintiff is a person with a disability within the meaning of the ADA, and (3) Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation.  *See generally* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem.") [DE 32].  As such, the central question with respect to Plaintiff's disability discrimination claim under the ADA is whether Plaintiff has pleaded an adverse employment action taken because of her disabilities.

"A plaintiff suffers an adverse employment action under the ADA when he or she endures a materially adverse change in the terms and conditions of employment."  *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015) (internal quotation marks and citation omitted).  A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Fox v. Costco Wholesale Corp.,* 918 F.3d 65, 74 (2d Cir. 2019).

Defendants argue here that Plaintiff cannot show she suffered any adverse employment action.  Defs.' Mem. at 4.  According to Defendants, as relevant here, Plaintiff alleges that she was discriminated against (1) by having her class observed more times then called for by District policy or custom and (2) by being assigned a disproportionate number of special needs students -- neither of which resulted in any adverse employment action.  *Id.*  Defendants assert that the

Amended Complaint is devoid of any plausible allegation of a material alteration to the terms and conditions of Plaintiff's employment as a result of her disability. *Id.* Defendants contend that the only allegation made by Plaintiff with regard to any "loss" is Plaintiff's contention that she was forced to utilize sick leave given her refusal to return to work as of April 24, 2018. *Id.* at 5.

According to the Plaintiff, Defendants' various unlawful acts, as pleaded in the Amended Complaint – including repeatedly ignoring Plaintiff's doctors' statements, observing and evaluating Plaintiff more frequently than other non-disabled teachers, assigning Plaintiff a disproportionate number of remedial and special needs students, and otherwise harassing and bullying Plaintiff – rendered her workplace increasingly intolerable and hostile to such an extent as to alter the terms and conditions of her employment. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") [DE 35] at 20-21. Notably, however, Plaintiff concedes that "until recently, there was no overt adverse employment action, and, notwithstanding the constant discriminatory and retaliatory harassment . . . [she] did not bring legal action . . . [because] any legal action would have been futile as defendants provided her with the reasonable accommodation she required." *Id.* at 11. Nevertheless, Plaintiff maintains that she suffered adverse employment action by (1) being denied a reasonable accommodation and (2) being assigned a disproportionate number of special needs students resulting in a disproportionately heavy workload.[2]

---

[2]    Specifically, Plaintiff alleges that:  (1) "almost every year since [she] first requested reasonable accommodation . . . the District has refused to provide it," in the first instance, including up to and during the 2016-2017 school year; (2) beginning in the 2016-2017 school year, Defendants denied her requests for reasonable accommodation and refused to engage in any interactive process and (3) leading up to and including the 2014-2015, 2016-2017, and 2017-2018 school years, Defendants assigned Plaintiff a disproportionately high number of learning disabled, delinquent, and/or remedial students. *See* Am. Compl.  ¶¶ 23, 36-40, 57-62, 154.

Indeed, both allegations are sufficient to plead an adverse employment action.  The Second Circuit has held that "an employer's failure to make a reasonable accommodation, particularly when coupled with a refusal to engage in a sufficient interactive process, makes out a prima facie case of disability discrimination where the Plaintiff has also made a sufficient showing that, *inter alia*, she is qualified for the position at issue." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 102 (2d Cir. 2009) (citing *Parker v. Columbia Pictures Industries,* 204 F.3d 326 (2d Cir.2000)).  Further, the assignment of a disproportionately heavy workload, according to the Second Circuit, can constitute an adverse employment action, including the workload associated with students in a class. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (concluding that Plaintiff pleaded a plausible discrimination claim under Title VII and § 1983 based on allegation that school district employer assigned him classes with higher number of Spanish-speaking students, thereby doubling his workload).

Plaintiff says she experienced an adverse employment action in being subjected to a hostile work environment, which ultimately forced her to retire effective June 2018.  *See* Am. Compl. ¶ 159.   As a result, Plaintiff alleges constructive discharge.  Constructive discharge occurs in the absence of a "discrete, identifiable act," when an employer, "'rather than directly discharging an individual, intentionally creates an intolerable atmosphere that forces an employee to quit voluntarily.'" *Flaherty v. Metromail Corp.,* 235 F.3d 133, 138 (2d Cir. 2000) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996)); *see also Morris v. Schroder Cap. Mgmt. Int'l,* 481 F.3d 86, 89 (2d Cir. 2007) (holding that constructive discharge "occurs 'when the employer, rather than acting directly, deliberately makes an employee's

According to Plaintiff, Budion informed her that she had been assigned a disproportionate number of special needs students because she had been provided with "a perk," namely one classroom in which to teach and prepare as a reasonable accommodation. *Id.* ¶ 38.

16

working conditions so intolerable that the employee is forced into an involuntary resignation.'") (quoting *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983)).  Working conditions are sufficiently "intolerable" when they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987).  "Given this high standard, an employee's mere dissatisfaction with job assignments or criticism from a supervisor do not, in themselves, give rise to a constructive discharge claim."  *Kalp v. Kalmon Dolgin Affiliates of Long Island Inc.,* 11–CV–4000, 2013 WL 1232308, at *9 (E.D.N.Y. Mar. 27, 2013), *appeal withdrawn* (Aug. 30, 2013).

Notably, an ADA constructive discharge claim must fail where the plaintiff does not establish a hostile work environment claim.  *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014) (citing *Zick v. Waterfront Comm. of New York Harbor,* 2012 WL 4785703, at *7 (S.D.N.Y. Oct. 4, 2012); *see also Murphy v. BeavEx, Inc.,* 544 F. Supp. 2d 139, 153–54 (D. Conn. 2008) (holding that "[plaintiff] has not brought forth sufficient evidence to support a hostile work environment claim.  Therefore any allegation of a constructive discharge must also fail."). *Cf. O'Neal v. State Univ. of N.Y.,* No. 01–CV–7802, 2006 WL 3246935, at *12 (E.D.N.Y. Nov. 8, 2006) (Noting, in the context of a gender discrimination claim, that "constructive discharge is a worse case harassment scenario, a hostile working environment ratcheted up to the breaking point," and holding that plaintiff's constructive discharge claim must fail based on her failure to demonstrate a hostile work environment.) (quoting *Penn. State Police v. Suders,* 542 U.S. 129, 147 (2004) (internal quotation marks omitted)).

Here, however, since Plaintiff has sufficiently pleaded adverse employment action to make out an ADA discrimination claim, the Court need not analyze whether Plaintiff has also

alleged constructive discharge at this time.  The Court will separately address Plaintiff's hostile work environment claim below.

 For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss Plaintiff's ADA discrimination claim under Count I be DENIED.

### 2.    *Reasonable Accommodation Claim*

To set forth a *prima facie* case for a reasonable accommodation claim, a plaintiff must show that:  (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 184 (2d Cir. 2006); *see also Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.,* No. 11 CIV. 8934, 2014 WL 896744, at *6 (S.D.N.Y. Mar. 3, 2014) (reciting elements).  "At the motion to dismiss stage, the [Defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Goonan v. Federal Reserve Bank of New York,* 916 F. Supp. 2d 470, 482 (S.D.N.Y.2013).

Here, Plaintiff has adequately alleged a failure to accommodate claim under the ADA. As noted, Defendants do not contest, and the Court is satisfied, that Plaintiff has sufficiently pleaded that Plaintiff's employer is subject to the ADA, that Plaintiff is a person with a disability within the meaning of the ADA, and that Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation.  As relevant here, Plaintiff alleges that (1) following her 1998 car accident, she annually provided medical documentation identifying her disability and supporting her request for reasonable accommodation, and (2) until the 2016-2017 school year, she was ultimately provided her requested accommodation.  *See* Am.

Compl. ¶¶ 22, 32, 33, 39, 57, 58, 63.  As a result, Plaintiff has sufficiently alleged that Defendants had notice of her disability.  Further, as noted above in connection with Plaintiff's ADA discrimination claim, Plaintiff has adequately pleaded that Defendants denied her a reasonable accommodation.  Specifically, Plaintiff claims that "almost every year since [she] first requested reasonable accommodation . . . the District has refused to provide it," including up to and during the 2016-2017 school year, when Plaintiff alleges that the District denied her requests for reasonable accommodation and rejected her efforts to engage in an interactive process.  *Id.* ¶¶ 22-23, 39-40, 57-66.

Defendants point out that (1) until the 2016-2017 school year, Plaintiff was provided with her requested accommodation, namely, one classroom in which to teach and prepare, and (2) for the 2016-2017 school year, Plaintiff was provided with a reasonable alternative accommodation — specifically, a teaching schedule according to which she was asked to change classrooms only once during the school day.  *See* Defs.' Memo at 11-12.  For those reasons, Defendants dispute whether and to what extent Plaintiff was provided reasonable accommodation.  However, "whether an accommodation request is reasonable is more appropriately determined on summary judgment or by the factfinder at trial."  *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015).  In these circumstances, Defendant has not satisfied the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation redounds in its favor.

Accordingly, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss Plaintiff's ADA accommodation claim as set forth in Count I be DENIED.

### 3.    *Retaliation Claim*

"The ADA also prohibits retaliation against an individual who has 'opposed any act or practice made unlawful under the ADA.'" *Vale*, 80 F. Supp. 3d at 438 (citing 42 U.S.C. § 12203). "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must allege that (1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* (citing *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002)) (internal quotation marks omitted); *see also Sobhi v. Sociedad Textil Lonia Corp.,* No. 13 CIV. 8073, 2014 WL 7474338, at *6 (S.D.N.Y. Dec. 30, 2014) (quoting *Treglia* ).

With regard to the first element – protected activity – Plaintiff alleges that she engaged in protected activity when she requested reasonable accommodation, threatened to take legal action against the District to compel them to provide reasonable accommodation, and commenced the instant lawsuit. Plaintiff generally asserts that "almost every year since [she] first requested reasonable accommodation . . . the District has refused to provide it/and or taken retaliatory action." Am. Compl. ¶ 23. Further, Plaintiff underscores specific retaliatory action taken against her after she requested reasonable accommodations and/or threatened legal action to compel such reasonable accommodations up to and throughout the 2014-2015, 2015-2016, and 2016-2017 school years. *Id.* ¶¶ 36, 41-43, 59-63. Plaintiff also alleges that she was retaliated against after filing the Initial Complaint in the instant action. *Id.* ¶ 108.

It is well-established that "[r]equests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities." *Gorbea v. Verizon N.Y., Inc.,* No. 11–CV–3758, 2014 WL 917198, at *11

20

(E.D.N.Y. Mar. 10, 2014); *see also Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018), *reconsideration denied,* No. 2:18-CV-01314, 2019 WL 1433095 (E.D.N.Y. Mar. 29, 2019) (citation omitted).  As such, Plaintiff's requests for reasonable accommodation, subsequent complaints to the District, and commencement of this action all constitute protected activity within the meaning of the ADA.  Accordingly, Plaintiff has adequately pleaded that she engaged in protected activity.

As to the second element – employer's knowledge of Plaintiff's protected activity – Defendants do not dispute that they were aware of Plaintiff's protected acts.  *See generally* Defs.' Mem.  Plaintiff contends that she requested reasonable accommodation for her disabilities on an annual basis in advance of the rising school year following her 1998 car accident and submitted medical documentation which identified her disabilities and set forth a medically necessary accommodation of one classroom in which to prepare and teach.  Am. Compl. ¶¶ 22, 28-29.  The factual allegations evidence Defendants' knowledge of Plaintiff's protected activity in that:  (1) Defendants are alleged to have taken action in response to Plaintiff's requests, including denying those requests in the first instance and, ultimately, beginning in 2015-2016, denying them altogether, *id.* ¶¶ 39-40, 57-68; (2) Plaintiff alleges she personally communicated a threat of legal action to Bannon, *id.* ¶¶ 29-30; and (3) Defendants moved to dismiss the Initial Complaint on December 27, 2017, before Plaintiff filed the Amended Complaint, in which Plaintiff alleges additional retaliation for bringing the lawsuit, *see* Defendants' First Notice of Motion to Dismiss.  Indeed, Defendants concede that the District responded to Plaintiff's requests for reasonable accommodation and related complaints, asserting that Plaintiff was provided with necessary medical accommodations – including reasonable alternate

accommodation – during her tenure at the District.  *See* Defs.' Mem. at 11-12.  Plaintiff has therefore adequately pleaded Defendants' awareness of Plaintiff's protected activity.

The Court next considers the third element – alleged "adverse employment actions" supporting the Plaintiff's ADA retaliation claim.  "Unlike the requirements for a standard disability-based discrimination claim, a plaintiff pursuing a retaliation claim need not allege that he or she was actually 'disabled' within the meaning of the ADA."  *Vale*, 80 F. Supp. 3d at 439 (citing *Stephan v. W. Irondequoit Cent. Sch. Dist.,* 769 F. Supp. 104, 108 (W.D.N.Y. 2011) *aff'd sub nom. Stephan v. W. Irondequoit Cent. Sch. Dist.,* 450 Fed. App'x. 77 (2d Cir. 2011). "In other words, prevailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA."  *Vale*, 80 F. Supp. 3d at 439 (E.D.N.Y. 2015) (quoting *Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 352 (E.D.N.Y. Dec. 29, 2014)).

Significantly, "[u]nlike claims of discrimination, which limit what qualifies as an 'adverse employment action' to changes in the terms and conditions of employment, adverse employment actions in the context of a claim of retaliation are much broader."  *Jeffries v. Verizon,* No. CV 10–2686, 2012 WL 4344197, at *18 (E.D.N.Y. Aug. 31, 2012) *report and recommendation adopted,* No. 10–CV–2686, 2012 WL 4344188 (E.D.N.Y. Sept. 21, 2012); *see Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); *Solomon v. Southampton Union Free Sch. Dist.,* No. 08–CV–4822, 2011 WL 3877078, at *10 (E.D.N.Y. Sept. 1, 2011) (concluding that the Supreme Court in *White* not only expanded the meaning of an adverse employment action in Title VII retaliation claims, but also in ADA retaliation claims, as the same standard applies in both).  According to *White, a*

22

"plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White,* 548 U.S. at 68 (internal quotation marks and citation omitted).

The Court has already found that Plaintiff alleged sufficient facts under the more demanding standard for traditional claims of disability discrimination to support certain "adverse employment actions."  Therefore, the actions already addressed by the Court, including being denied reasonable accommodation and being assigned a disproportionate workload, qualify as "adverse employment actions" under the more lenient standard for retaliation claims under the ADA. *See Vale*, 80 F. Supp. 3d at 440.  The Court also finds other instances of adverse employment actions within the meaning of the ADA in the factual allegations, including (1) increased observations and evaluations of Plaintiff and (2) the assignment of a new teaching schedule which required Plaintiff to move to different classrooms unnecessarily throughout the school day.

Plaintiff alleges that during the 2015-2016 school year, she was targeted with excessive evaluations and observations in contravention of the CBA after she contacted Superintendent Bannon and threatened legal action to compel the provision of a reasonable accommodation. Am. Compl. ¶¶ 41-47.  Although it is well-settled that evaluations, even inaccurate evaluations, do not rise to the level of adverse action within the context of a traditional discrimination claim, s*ee Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 373 (E.D.N.Y. 2014), the Court finds that Plaintiff has satisfied the more lenient ADA retaliation standard, alleging that the excessive observations and evaluations would have dissuaded a reasonable employee from making or supporting a charge of discrimination.  In addition. Plaintiff alleges that following

23

commencement of the instant action, leading up to the 2017-2018 school year, she was issued a new teaching schedule which required her to move to a different classroom every period during the school day.  Am. Compl. ¶¶ 109-10.  Plaintiff also claims that she was directed not to store her materials in any of her classrooms.  *Id.* ¶¶ 126.  The Court is satisfied Plaintiff has established that the new schedule would have dissuaded a reasonable employee from making or supporting a charge of discrimination since Plaintiff alleges significant disabilities, which are easily exacerbated by moving in small spurts.  *Id.* ¶ 75-76; *see White*, 545 U.S. 53 at 69 ("Context matters . . . a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously . . . to a young mother with school children.").

Finally, the Court considers the fourth element – causation.  "[A] plaintiff alleging retaliation . . . must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision."  *Laface*, 349 F. Supp. 3d at 150 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citation omitted)).  At the pleading stage, causation may be shown:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Laface*, 349 F. Supp. 3d 150 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Here, Plaintiff's allegations regarding Defendants' retaliatory conduct are sufficient to establish a causal connection at this stage.  Plaintiff alleges that leading up to almost every school year since she first sustained her injuries, Defendants refused to provide a reasonable

24

accommodation.  *See* Am. Compl. ¶ 23.  Further, Plaintiff alleges that in response to Plaintiff's requests for reasonable accommodation leading up to the 2014-2015 and 2016-2017 school years, Defendants issued Plaintiff a teaching schedule which required Plaintiff to teach a disproportionately high number of special needs students.  *Id.* ¶¶ 36-40, 57-62, 154.  In addition, Plaintiff states that in response to commencing the instant lawsuit in June 2017, Defendants issued a new teaching schedule that required Plaintiff to move to a different classroom every period during the school day.  *Id.* ¶¶ 109-10.  As such, this Court concludes that the temporal proximity of Defendant's alleged retaliatory acts in relation to Plaintiff's alleged protected activity is sufficient to support an inference of causation.  Although the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [the Court has] previously held that five months is not too long to find the causal relationship."  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F. 3d 545, 555 (2d Cir. 2001) (internal quotation marks and alterations omitted); *see also Beaumont v. Cablevision Sys. Corp.*, 10-CV-3585, 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012) ("This case thus falls into somewhat of a gray area—it involves a temporal gap that is longer than what most courts in this Circuit have found sufficient to support a causal connection, *see Garrett,* 2007 WL 1174891, at *21, but not so long as to be beyond what the Second Circuit has held could be sufficient, *see Gorzynski,* 596 F.3d at 110.").

Plaintiff states that she made her requests for accommodation [and filed the instant lawsuit] during the summer months before the start of the rising school year, in response to which Defendants took action affecting her teaching schedule.  *See* Am. Compl. ¶¶ 32, 58-59.  As such, the lapse of time between Plaintiff's acts and Defendant's alleged retaliatory conduct

was no more than several months.  In these circumstances, since school is not in session during the summer months, the timing is enough to support causation.

Accordingly, Plaintiff has adequately alleged ADA retaliation.  However, the Court finds that Plaintiff has not adequately pleaded causality with respect to the allegation that she was targeted with observations and evaluations during the 2015-2016 school year following a threat of legal action communicated to Superintendent Bannon.  The factual allegations do not indicate sufficient temporal proximity, nor do they suggest any connection between Plaintiff's threat to take legal action and the subsequent increased scrutiny.  Indeed, Plaintiff asserts generally that each year after her 1998 car accident, she threatened legal action to obtain the reasonable accommodation prescribed by her medical professionals. *Id.* ¶ 29.  The factual allegations do not indicate that the increased observations and evaluations conducted during the 2015-2016 school year were related to, or resulted from, Plaintiff's threat -- which according to Plaintiff was a routine procedure she employed to obtain her requested reasonable accommodation.

Accordingly, to the extent set forth above, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's ADA retaliation under Count 1 claim be DENIED.

### 4.    *Hostile Work Environment*

Previously, the Second Circuit assumed – without deciding – that hostile work environment claims are cognizable under the ADA.  *See Flieger v. E. Suffolk BOCES*, 693 Fed. App'x 14, 19 (2d Cir. 2017).  In March 2019, however, the Second Circuit followed a number of its sister circuits and definitively held that hostile work environment claims are actionable under the ADA.  *Fox v. Costco Wholesale Corp.,* 918 F.3d 65, 74 (2d Cir. 2019).  Significantly, the Court of Appeals reasoned that since the "'ADA echoes and expressly refers to Title VII and because the two statutes have the same purpose—the prohibition of illegal discrimination in

26

employment—' it follows that disabled Americans should be able to assert hostile work environment claims under the ADA as can those protected by Title VII under that statute." *Id.* (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001)).

To plead a hostile work environment claim, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451-52 (E.D.N.Y. 2011) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  The allegations must plausibly state that the complained of conduct  "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

To determine whether the conduct alleged is sufficiently severe or pervasive, courts look to the following non-exhaustive factors:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 260-61 (E.D.N.Y. 2012) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)) (internal quotations and citation omitted); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693-94 (2d Cir. 2012) *Acosta v. City of New York*, No. 11 Civ. 856, 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012); *Bowen-Hooks*, 13 F. Supp. 3d at 233.

Here, Plaintiff contends that Defendants' various unlawful acts -- including repeatedly ignoring Plaintiff's doctors' statements, observing and evaluating Plaintiff more frequently than other non-disabled teachers, assigning Plaintiff a disproportionate number of remedial and special needs students, and otherwise harassing and bullying Plaintiff -- rendered her workplace increasingly intolerable and hostile to such an extent as to alter the terms and conditions of her employment. *See* Pl.s' Opp'n at 20-21. The factual allegations concerning Plaintiff's hostile work environment claim state that: (1) "[e]ach year that the district granted plaintiff's request for reasonable accommodation, defendants would invariably harass [her] . . . so as to render her . . . work environment increasingly hostile in an effort to constructively discharge her," *id.* ¶ 34; and (2) the District's "deviation from [its] policy regarding evaluations . . . was done purposefully . . . [to] create a hostile workplace," ¶ 53. In addition, Plaintiff claims generally that Defendants' "continuous and ongoing unlawful discrimination, retaliation and pervasive harassment," *id.* ¶¶ 164-66, rendered her workplace hostile, including being reprimanded in front of her class, *id.* ¶¶ 131-34, and dismissed from a teachers' conference, *id.* ¶¶ 98-100.

Practically speaking, Plaintiff contends that the conditions of her employment were altered for the following reasons: (1) the District annually denied her requested reasonable accommodation in the first instance, acquiescing only after the submission of medical documentation and the threat of legal action, *id.* ¶¶ 28-29; (2) the District altogether denied her requested reasonable accommodation beginning in the 2016-2017 school year, *id.* ¶¶ 39-40, 57-58, 116, 121; (3) the District deviated from its teacher evaluation/observation policy and evaluated/observed Plaintiff four times, instead of two times, rating Plaintiff ineffective on one occasion, *id.* ¶¶ 41-49; (4) Plaintiff was assigned a disproportionate number of special needs students, increasing Plaintiff's workload, *id.* ¶ 36; (5) Plaintiff was assigned a teaching schedule

that required excessive movement throughout the day, *id.* ¶¶ 59-60; 109-10; and (6) Plaintiff was otherwise bullied and harassed, including being told that she should not have appeared at a teachers' conference in May 2016 and being reprimanded in October 2017 in front of her class, *id.* ¶¶129-34.

Although Plaintiff's complaints may be sufficient to make out claims for discrimination and retaliation, the factual allegations do not sufficiently allege conduct which is so objectively severe or pervasive as to alter the conditions of Plaintiff's employment. Significantly, the Second Circuit has held that even where a plaintiff contends Defendants "excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her," the factual allegations did not rise to the level of hostile work environment under Title VII. *See Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010).

Significantly, "[s]everity is a hallmark of a hostile work environment claim. Such claims 'are not intended to promote or enforce civility, gentility or even decency.'" *Acosta*, 2012 WL 1506954, at *7 (quoting *Ennis v. Sonitrol Mgmt. Corp.*, No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)); *see Das v. Consol. Sch. Dist. of New Britain*, 369 Fed. App'x 186, 189-90 (2d Cir. 2010) ("Generally, unless an incident of harassment is sufficiently severe, [the] incidents [comprising a hostile work environment claim] must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (internal quotation marks and citation omitted). Here, Plaintiff alleges episodic acts which were not physically threatening or sufficiently severe or pervasive. Indeed, Plaintiff's chief complaints – that she was denied a reasonable accommodation, assigned a disproportionate number of special needs students, and evaluated more than other non-disabled teachers – are not sufficient to plead a

29

hostile work environment, especially since Plaintiff does not dispute that Defendants either granted Plaintiff's requested reasonable accommodation or offered an alternative accommodation.  Further, Plaintiff concedes that she was evaluated *only* two times more than non-disabled teachers, and her sole ineffective rating was ultimately expunged.  Am. Compl. ¶¶ 22, 47, 51, 68; *see also* Pl.'s Mem.  *Compare with Fox,* 918 F.3d at 74 (holding that "months and months" of disparaging discriminatory comments lobbed at Plaintiff "whenever" he would experience tics as a result of his disability were sufficient to create an issue of fact on summary judgment as to whether Plaintiff was subject to a hostile work environment under the ADA).

Accordingly, for the foregoing reasons, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's ADA hostile work environment claim as set forth in Count I be GRANTED and the claim be dismissed.

### 5.    *Timeliness of ADA Claims*

#### a.    **Timeliness of Administrative Charge**

Defendants underscore that the statute of limitations for discrimination and retaliation claims pursuant to the ADA is three years and assert that any claim arising before July 18, 2014 — three years before Plaintiff commenced the instant action — is time-barred.  *See* Defs.' Mem. at 5-6.  Further, to the extent Plaintiff filed her EEOC complaint more than 300 days subsequent to any act of alleged discrimination or retaliation, Defendants contend that such claims are likewise precluded.  *Id*. at 6.  Defendants state that Plaintiff omits from her pleadings the date she filed her EEOC complaint and they point out that her EEOC charge bears a 2017 filing date.  *Id.* According to Defendants, "even assuming [] [P]laintiff filed her EEOC complaint on the earliest date possible, Monday, January 2, 2017, any alleged incidents of discrimination or retaliation that occurred prior to March 8, 2016 (300 days prior to January 2, 3017) are time barred."  *Id.*

In opposition, Plaintiff argues that Defendants have pursued a discriminatory agenda, subjecting her to an ongoing and continuous pattern and practice of acute harassment and retaliation, sufficient to constitute a "continuing violation." *See* Pl.'s Opp'n at 10-13.  On that basis, Plaintiff argues that while acts falling within three years prior to November 17, 2016 are timely, "this date does not cap the limit for damages." *Id*. at 15.  Plaintiff asserts that she only filed a complaint with the EEOC and New York State Division of Human Rights on November 17, 2016.  *See id.* at 13-14; *see also* Am. Compl. ¶¶ 13-14.

In order for a plaintiff to bring an ADA claim in federal court, she must file administrative charges with the EEOC within 300 days of the alleged discriminatory act(s) and bring suit within 90 days of obtaining a right-to-sue letter from the EEOC.  *Bloom v. New York City Bd. of Educ. Teachers' Ret. Sys. of Cty of New York,* No. 00 CIV. 2728, 2003 WL 1740528, at *7 (S.D.N.Y. Apr. 2, 2003); *Zerilli–Edelglass v. New York City Transit Auth.,* 333 F.3d 74 (2d Cir. 2003); 42 U.S.C. § 2000e–5(f)(1).  Generally, courts lack jurisdiction over any claim not asserted in administrative proceedings, unless such claim is "reasonably related" to claims actually asserted.  *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* at 360-61 (internal quotation marks and citation omitted).  "Successive conduct that is part of a continuing wrong is by its very nature 'reasonably related' to the earlier conduct." *Id.* (citing *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir. 1994)).  Significantly, a plaintiff may assert a continuing violation theory only if she asserted that theory in administrative proceedings.  *See, Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir. 1985).

In this case, the factual allegations state that "Plaintiff timely initiated this action by filing a complaint with the Equal Employment Opportunity Commission" and "the New York State Division of Human Rights on November 17, 2016." Am. Compl. ¶ 13 and n. 1. Although Plaintiff has not attached her EEOC complaint to any filings in this action, it is apparent from the pleadings that Plaintiff filed the operative administrative charge on November 17, 2016. *Id.*[3] On June 15, 2017, the EEOC granted Plaintiff's request to dismiss her charges so that she could pursue litigation and the agency issued a right-to-sue letter. Am. Compl., Ex. 1. Plaintiff commenced this action by filing the Initial Complaint on July 18, 2017. *See* Am. Compl.

Applying the relevant time constraints, the Court notes that: (1) any alleged incidents of discrimination or retaliation which occurred prior to January 22, 2016 (300 days prior to November 17, 2016) are time-barred and (2) Plaintiff commenced this lawsuit well within the 90 days after receipt of her right-to-sue letter. The Court points out that an additional EEOC complaint is not required for acts occurring after November 17, 2016 to the extent such acts are reasonably related to the claims set forth in Plaintiff's November 17, 2016 administrative charge.

### b.     The Continuing Violation Doctrine

Plaintiff argues that acts which occurred prior to January 22, 2016 are timely under the "continuing violation" doctrine since they are part of an ongoing practice and policy which continues to the present day. Pl.'s Opp'n. at 14. Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination . . . the

---

[3]     The Court points out that for purposes of the filing deadline, a complaint filed with the NYSDHR "is considered to be cross-filed with the EEOC . . . ." *Morales v. City of N.Y. Dep't of Juvenile Justice*, No. 10 Civ. 829, 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012). "Thus, in New York, a plaintiff typically has 300 days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR." *Visco v. Brentwood Union Free Sch. Dist.*, 991 F. Supp. 2d 426, 433 (E.D.N.Y. 2014).

commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks and citation omitted).   Notably, "the continuing violation doctrine is usually associated with a discriminatory policy, rather than with individual instances of discrimination." *Id.*  Indeed, acts so "isolated in time . . . from each other . . . [or] from the timely allegations[ ] as to break the asserted continuum of discrimination" will not suffice.  *Id.*  However, "a continuing violation may be found where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Id.* (internal quotation marks and citation omitted).

As a general matter, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Trinidad v. N.Y. City Dep't of Corr.,* 423 F.Supp.2d 151, 165 n. 11 (S.D.N.Y. 2006) (internal quotation marks omitted); *Nagaraj v. Sandata Tech., LLC,* CV18-4748, 2019 WL 3874733, at *4 (E.D.N.Y. July 8, 2019); *Kubicek v. Westchester County,* No. 08–CV–372, 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8, 2009); *Stouter v. Smithtown Cent. School Dist.,* 687 F. Supp. 2d 224, 231 (E.D.N.Y. 2010); *see also Scroxton v. Town of Southold,* No. 08–CV–4491, 2010 WL 1223010, at *4 (E.D.N.Y. March 24, 2010).   "The exception usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests."  *Scroxton.* 2009 WL 3720155, at *6.  It "does not apply to discrete, completed employment actions such as transfers, failures to promote, demotions, or inadequate wages."  *Id.* (citation omitted); *Nagaraj,* 2019 WL 3874733, at *4.  Further, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  *Flores v. Entergy Nuclear Operations,*

33

*Inc.*, 313 F. Supp. 3d 511, 525 (S.D.N.Y. 2018), *aff'd*, 768 Fed. App'x 139 (2d Cir. 2019)

(quoting *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 (2011)) ; *see also*

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (the doctrine does not apply to "discrete []

acts, even where those discrete acts are part of a 'serial violation'") (quoting *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *Gregory v. Inc. Vill. of Ctr. Island*, No.

14-CV-2889, 2015 WL 5093623, at *5 (E.D.N.Y. Aug. 28, 2015) ("the . . . doctrine does not

apply to a claim (or series of claims) arising from discrete actions, even if those actions have

long-lasting effects").  In addition, as relevant here, "an employer's denial of a requested

accommodation does not give rise to a continuing violation, but is a discrete employment action

that requires the plaintiff to file a charge with the EEOC within 300 days of the denial." *Francis*

*v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 776 (E.D.N.Y. 2016) (internal quotation

marks and citation omitted).

      The factual allegations raised in the Amended Complaint do not support application of

the continuing violation exception.  Significantly, each of Plaintiff's discrimination and

retaliation claims concern discrete acts.  Plaintiff chiefly complains that Defendants repeatedly

failed to provide her with her requested reasonable accommodation.  However, as noted above,

an employer's denial of a requested accommodation does not give rise to a "continuing

violation." *Francis*, 177 F. Supp. 3d 754, 776 (E.D.N.Y. 2016).  Nor can Plaintiff assert a

continuing violation based on a hostile workplace since the Court has already ruled that Plaintiff

failed to state a claim for hostile work environment.

      Further, the other factual allegations on which Plaintiff's ADA claims are based –

including (1) being assigned a disproportionate number of special needs students, (2) being

evaluated and observed two times more than District policy or practice, and (3) being assigned

an undesirable teaching schedule – all concern facially discrete acts.  *See Casale v. Reo,* No. 04-CV-1013, 2005 WL 1660743, at *4 (N.D.N.Y. July 13, 2005) (rejecting the continuing violation theory in ADA action where plaintiff complained she was transferred several times, including to a more stressful and demanding workplace teaching emotionally disturbed children, and finding the transfers to be "discrete acts").  Moreover, the Supreme Court has rejected the notion that a continuing violation theory can be applied to discrete acts of unlawful employment practices, stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

For these reasons, the Court finds that any ADA claims concerning acts which occurred before January 22, 2016 are time-barred.

### C.    New York State Disability Discrimination Claims

#### 1.    *As Against the District*

Plaintiff also asserts claims against the District in Count V for violating the NYSHRL as well as claims in Count VI against Bannon, Andrews, and Budion for aiding and abetting the District.  Am. Compl. ¶¶ 218-37.[4]  As applicable here, New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.  *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 332 n. 1 (2d Cir. 2000); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 (2d Cir. 2004).  Consequently, although Plaintiff does not expressly identify any particular causes of action, to the extent Plaintiff asserts the same causes of action

---

[4]    Plaintiff also asserts a separate NYSHRL cause of action for "unlawful retaliation under state law as against all defendants."  Am. Compl. ¶¶234-47.  In the Court's view, Count VIII is duplicative of Plaintiff's other NYSHRL claims.  In any event, the Court considers Plaintiff's NYSHRL claims together here.

under the ADA and the NYSHRL, the Court's reasoning and rulings as to Plaintiff's ADA

claims apply equally to Plaintiff's NYSHRL claims.  *See Goonan v. Fed. Reserve Bank of New*

*York*, 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013) ("Thus, to the extent that [Plaintiff] brings a

state-law disability-discrimination claim, it survives or fails on the same basis as his ADA

claim.") (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).

### 2. *Aiding and Abetting Claims against Individual Defendants*

The Court must, however, consider whether and to what extent Plaintiff has adequately

pleaded aiding and abetting as against Bannon, Andrews, and Budion.  "An employee may not

be individually subject to suit as an employer under Section 296(1) of the [NYS]HRL 'if he [or

she] is not shown to have any ownership interest or any power to do more than carry out

personnel decisions made by others.'" *Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F. Supp.

2d 376, 379 (S.D.N.Y.1999) (quoting *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 542, 483

N.Y.S.2d 659, 473 N.E.2d 11 (1984)).  Conversely, "individuals may be held liable given

sufficient supervisory power."  *Parra v. City of White Plains,* 48 F. Supp. 3d 542, 554, 2014 WL

4468089, at *9 (S.D.N.Y. 2014) (citations and quotation marks omitted).  Nevertheless, "an

individual cannot be held liable for discriminatory conduct under the NYSHRL unless that

individual actually participate[d] in the conduct giving rise to a discrimination claim." *Westbrook*

*v. City Univ. of New York,* 591 F. Supp. 2d 207, 224 (E.D.N.Y. 2008) (internal quotation marks

and citation omitted); *Hirsch v. Columbia University,* 293 F. Supp. 2d 372, 377–78 (S.D.N.Y.

2003) (same).  Further, a co-worker who "lack[s] the authority to either hire or fire the plaintiff"

may still be held liable as an aider-abettor under NYSHRL § 296(6) if he "actually participates in

the conduct giving rise to a discrimination claim." *Feingold v. New York,* 366 F.3d 138, 158 (2d

Cir. 2004) (internal quotation marks omitted).

36

Here, Plaintiff seeks to hold Bannon, Andrews and Budion individually liable under an "aiding and abetting" theory of discrimination.[5]   The Court has carefully reviewed the Amended Complaint and points out the factual allegations concerning the individually named defendants. With respect to District Superintendent Bannon, the factual allegations state that Plaintiff contacted Bannon during the 2015-2016 school year, after Plaintiff's efforts to obtain an accommodation were denied, and threatened legal action through her union representative to obtain her requested accommodation.  Am. Compl. ¶ 41.  Further, the amended pleading states that after contacting Bannon to demand reasonable accommodation, and threatening legal action, "[the] District targeted [P]laintiff . . . by engaging in informal and unannounced observations/evaluations of her teaching performance."  Am. Compl. ¶ 42.

As to Assistant Superintendent Andrews, Plaintiff contends that:  (1) throughout the 2016-2017 school year, he ignored Plaintiff's request to engage in an interactive process, *see id.* ¶ 73; (2) he placed Plaintiff on Family and Medical Leave retroactively and prematurely – causing Plaintiff to lose accrued sick days, *see id.*; (3) he approached in a hostile manner at the teachers' conference on May 26, 2017 and informed her that she should not have attended the conference, *see id.* ¶ 100; and (4) he failed to respond to Plaintiff's April 2017 request to return to return to work, *see id.* ¶  204.

As for Budion, the Foreign Lanugage Coordinator and Plaintiff's supervisor, the allegations are that: (1) in June 2015, Budion informed Plaintiff that she was assigned a disproportionate number of special needs students because of her medical accommodation,

---

[5]     Although Plaintiff lists Agosta under "Parties," Am. Compl. ¶ 6, Agosta is not named in the caption of the case, nor is he named in Plaintiff's sixth cause of action for aiding and abetting, *id.* ¶¶ 229-37.  The Court will consider only the individual defendants named in Count VI, namely, Bannon, Andrews, and Budion.  In any event, the factual allegations mention Agosta twice in passing.  *Id.* ¶¶ 52, 60.

which Budion characterized as a "perk," *id.* ¶ 38; and (2) during the 2015-2016 school year,

"Plaintiff was evaluated and/or observed by [] Principal Agosta and/or Coordinator Budion," *id.*

¶ 52.

In view of these allegations, Plaintiff has adequately pleaded the direct participation of

the individual defendants in conduct giving rise to Plaintiff's discrimination claims.  Further, the

Court notes that Superintendent Bannon, Assistant Superintendent Andrews, and Coordinator

Budion are each alleged to have occupied supervisory positions empowered to do more than

carry out personnel decisions made by others.[6]  On that basis, Plaintiff has sufficiently pleaded

aiding and abetting liability as to the individual defendants.

### 3.     *Condition Precedent*

Defendants argue that Plaintiff has failed to comply with a condition precedent in that

Plaintiff never presented a notice of claim as required by § 3813 of New York Education Law

("N.Y. Educ. Law") and General Municipal Law ("GML") § 50-I.  *See* Defs.' Mem. at 22.

Plaintiff responds that:  (1) a notice of claim is not a condition precedent to an employment

discrimination claim against a municipality or school since such conduct is not a tort under GML

§ 50-e and (2) in any event, Plaintiff substantially complied with § 3813 by sending a detailed

letter to the District which provided the underlying factual basis concerning, *inter alia*, Plaintiff's

state law discrimination claims.  *See* Pl.s' Mem. at 16.

Section 3813 of the N.Y. Educ. Law provides in pertinent part as follows:

> 1. No action or special proceeding, for any cause whatever . . . shall be
> prosecuted or maintained against any ... board of cooperative educational
> services ... or any officer of a . . . board of cooperative educational services
> . . . unless it shall appear by and as an allegation in the complaint or
> necessary moving papers that a written verified claim upon which such

---

[6]     *See* note 9 below for a discussion on the individual defendants' roles as officers of the District.

action or special proceeding is founded was presented to the governing body . . . within three months after the accrual of such claim . . . .

2. Notwithstanding anything to the contrary hereinbefore contained in this section, no action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section or against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment and/or under the direction of the board of education, trustee or trustees, or governing body of the school unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law. Every such action shall be commenced pursuant to the provisions of section fifty-i of the general municipal law. . . .

N.Y. Educ. Law § 3813.

It is well-settled that compliance with N.Y. Educ. Law § 3813 is a condition precedent to bringing a tort action against a school board, its members or employees. *See Caputo*, 218 F. Supp. 3d at 193 (citing *P.J. Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No. 6,* 272 N.E.2d 488 (1971)). Indeed, § 3813's notice of claim provisions are jurisdictional in nature, and a plaintiff's failure to timely comply precludes an action. *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 125 (W.D.N.Y. 2010); *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) ("Notice of claim requirements are construed strictly" and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action.") (citation omitted).

While subsection one of § 3813 requires a written verified claim for all actions, subsection two requires a notice of claim before bringing a tort action. *Peritz v. Nassau Cty. Bd. of Coop. Educ. Servs.*, No. 16CV5478, 2019 WL 2410816, at *2 (E.D.N.Y. June 7, 2019), *reconsideration denied*, No. 16CV5478, 2019 WL 2743640 (E.D.N.Y. July 1, 2019). Notably, "[t]he notice of claim requirements apply equally to state tort claims brought as pendent claims

in a federal civil rights action." *Warner v. Village of Goshen Police Dept.,* 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).

Although Plaintiff argues that a discrimination claim is not a tort action, and, therefore, a notice of claim need not be filed as a condition precedent to commencing a lawsuit, the Second Circuit is currently undecided as to whether NYSHRL claims against a school district require a notice of claim. *See Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416 (CS), 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017), *aff'd*, 750 Fed. App'x 41 (2d Cir. 2018).

In *Margerum v. City of Buffalo*, the New York Court of Appeals considered whether the GML requires a notice of claim for actions based on NYSHRL claims.  24 N.Y.3d 721, 727 (2015).  Ultimately, the court in *Margerum* held that NYSHRL claims are not founded upon tort, and therefore are not subject to the notice of claim requirement under N.Y. Educ. Law § 3813. *Margerum,* 24 N.Y.3d at 730.  "Significantly, however, cases decided subsequent to *Margerum* [] have explained that a notice of claim must be filed for NYSHRL claims against the entities listed in § 3813(1) as that section applies to an 'action . . . for any cause whatever.'[7] *Peritz* 2019 WL 2410816 at *2 (citation omitted); *Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126, 162-63 (E.D.N.Y. 2018); *Bagarozzi v. New York Dept. of Educ.*, 2019 WL 1454316 at *3-4 (S.D.N.Y. Mar. 31, 2019); *Berrie v. Bd. of Educ. of Port-Chester-Rye Union Free Sch. Dist*, 2017 WL 2374363 *8 (S.D.N.Y. May 31, 2017); *United States v. New York Dept. of Educ.*, 2017 WL 1319695, *2 (S.D.N.Y. Apr. 4, 2017).

---

[7]    Section 3813(1) explicitly concerns lawsuits against "any school district, board of education, board of cooperative educational services . . . or any officer of [same]."  N.Y. Educ. Law § 3813.

Plaintiff relies heavily on *Caputo v. Copiague Union Free Sch. Distr*., a case from this District which reasoned that *Margerum* made clear that NYSHRL claims "are not tort action[s] under [N.Y. Educ. Law] § 3813 and therefore a notice of claim for a NYSHRL claim against a school district or its personnel is not required." No. 15-CV-5292, 2016 WL 6581865, at *6 (E.D.N.Y. Nov. 4, 2016). In *Caputo*, the District Court held that a former principal need not file a notice of claim for NYSHRL claims against the school district defendant. *Id.* Significantly, however, in arriving at its holding, the court in *Caputo* cited only N.Y. Educ. Law § 3813(2) – which concerns actions founded upon tort – apparently overlooking N.Y. Educ. Law § 3813(1), which concerns any action whatsoever. *See Caputo*, 2016 WL 6581865 at *6; *see also United States v. New York City Dep't of Educ.*, No. 16-CV-4291, 2017 WL 1319695, at *2 (S.D.N.Y. Apr. 4, 2017) (pointing out that "*Caputo* overlooked a salient fact: [§] 3813 contains two subdivisions, each with its own requirements. *Margerum* dealt with the question whether NYSHRL claims are 'founded upon tort' within the meaning of [GML] § 50-e. Section 50-e, however, is incorporated by reference into subdivision [two] only. But subdivision [one], unlike subdivision [two], is not limited to actions 'founded upon tort.' Thus, even if *Margerum* compelled the conclusion that NYSHRL claims do not require a notice of claim under subdivision [two], that case has no bearing on whether the same is true of subdivision [one].")

In any event, the Court need not decide how to apply *Margerum*, since Plaintiff substantially complied with § 3813 – by sending a detailed letter to the District providing the underlying factual basis for, *inter alia*, her state law discrimination claims. Indeed, unlike § 3813(2), § 3813(1) "does not require a formal notice of claim or refer to [GML] § 50(e), but only states that the claims must have been 'presented to the . . . district or school within three months after the accrual of such claim' prior to filing a complaint." *Berrie,* 2017 WL 2374363 at

41

*8 (holding that § 3813(1)'s notice requirement is satisfied by any document sufficiently formal and detailed for the District to investigate the claims).

Here, Plaintiff alleges that she sent the District a letter containing formal complaints of discrimination on September 16, 2016. *See* Pl.'s Opp'n. at 17. The Court points out that the September 16, 2016 letter is omitted altogether from the Amended Complaint. Nor did Plaintiff attach the letter to her opposition to the instant motion. Nevertheless, Plaintiff filed a charge with the EEOC on November 17, 2016, concerning, *inter alia*, Plaintiff's discrimination claims. And, in any event, Defendants do not contest notice of Plaintiff's claims. Therefore, setting aside for the moment whether Plaintiff's claims are subject to the continuing violation exception, Plaintiff's NYSHRL claims would be limited to the period of August 17, 2016 to November 17, 2016 (90 days before Plaintiff filed an official administrative charge).

### 4.    *Timeliness of the NYSHRL Claims*

In general, claims brought pursuant to the NYSHRL are governed by a three-year statute of limitations. *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-CV-4821, 2016 WL 4536873, at *16 (E.D.N.Y. Aug. 30, 2016); *Bowen-Hooks*, 13 F. Supp. 3d at 208 (citing N.Y.C.P.L.R. § 214(2) ); *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *Koerner v. State of New York*, 62 N.Y.2d 442, 478 N.Y.S.2d 584, 467 N.E.2d 232, 233–34 (1984) (finding a three-year statute of limitations applicable to discrimination claims filed under the NYSHRL). In addition, the limitations period is tolled during the pendency of a complaint before an administrative body. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014); *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *6 (E.D.N.Y. Mar. 26, 2013); *see also DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("Claims brought under the

42

NYSHRL . . . are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."); *Wilson v. N.Y.C. Police Dep't*, No. 09–CV–2632, 2011 WL 1215735, at *4 (S.D.N.Y. Mar. 25, 2011) ("Courts in this circuit have held that the statute of limitations applicable to claims under . . . the NYSHRL is tolled during the period in which the complaint is filed with the EEOC."); *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011) (filing a complaint with the EEOC was sufficient to toll the statute of limitations on the state claims).

Plaintiff's EEOC charge was pending from November 17, 2016 (the date she filed her EEOC complaint) through June 15, 2018 (the date the EEOC issued Plaintiff a right-to-sue letter). As such, Plaintiff's NYSHRL claims are tolled during that time period — a total of 575 days. Thus, although Plaintiff filed the Initial Complaint in this Court on July 18, 2017 and her NYSHRL claims would have otherwise accrued no earlier than July 18, 2014, Plaintiff gets the benefit of the time which elapsed during the period within which her administrative charge was pending before the EEOC. Therefore, claims arising under the NYSHRL which occurred after November 17, 2013 generally may be considered by the Court. However, in light of the fact that Plaintiff has brought claims directly against the District and certain individuals who may be considered school officers, that is not the end of the analysis.

Notwithstanding the general three-year statute of limitations applicable to claims brought pursuant to the NYSHRL, "New York law provides for a shorter [one-year] statute of limitations for claims against schools, school districts, and boards of education." *Sotomayor*, 862 F. Supp. 2d at 249; *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 303 (E.D.N.Y. 2012); *see* N.Y. Educ. Law § 3813(2–b) ("[N]o action or special proceeding shall be commenced against any [school, school district, board of education, or an 'officer of a school district, board

43

of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four'] *more than one year after the cause of action arose.*") (emphasis added).  This truncated statute of limitations also applies to an "officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four."  *Sotomayor*, 862 F. Supp. 2d at 249 (citing N.Y. Educ. Law § 3813(1)).[8]  However, school principals and other school administrators are not generally considered officers of a board of education unless they are employed by a statutory special school and, as such, claims brought against these individuals are not governed by the one-year statute of limitations.  *See Sotomayor*, 862 F. Supp. 2d at 249; *Fierro v. City of New York*, 591 F. Supp. 2d 431, 447 (S.D.N.Y. 2008) (holding that plaintiff's claims against the school principal were not barred by a one-year statute of limitations since the principal was "not an officer within the meaning of section 3813"), *rev'd on other grounds*, 341 Fed. App'x 696 (2d Cir. 2009).

Applying these principles to the instant case, Plaintiff's NYSHRL claims against the District, the Board, Superintendent Bannon, Assistant Superintendent Andrews, and Foreign Language Coordinator Budion are subject to the one-year statute of limitations, since these individuals are considered "officers"[9] within the meaning of N.Y. Educ. Law § 3813.  Had

---

[8]    "Article 85 schools are statutorily designated 'special schools,' including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws."  *Richards v. Calvet*, No. 99 Civ. 12172, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005).

[9]    The term "school officer" is defined in the New York Education Law as "a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of

Plaintiff actually asserted claims against Agosta, who was the District's high school principal, they would be governed by the longer three-year limitations period. *See Edwards*, 904 F. Supp. 2d at 303 ("It is well-settled that school principals ... are not 'officers' of the District or Board within the meaning of the statute."); *Benedith*, 38 F. Supp. 3d at 312 (E.D.N.Y. 2014) (finding that school principal was not an "officer" within the meaning of Section 3813). However, Plaintiff has not set forth any claims as against Agosta, omitting him from all ten causes of action.

Further, although as a general matter, the statute of limitations for claims brought pursuant to the NYSHRL are tolled during the pendency of the filing of an administrative charge of discrimination, *see DeNigris*, 861 F. Supp. 2d at 192, where claims are brought against school districts and school officers, these claims are not subject to such tolling, but must instead comply with the strict one-year statute of limitations period set forth in N.Y. Educ. Law § 3813. *See Cincotta*, 2016 WL 4536873, at *16 (recognizing that "although the Second Circuit appears not to have directly addressed the issue, most lower courts have held that claims against school districts and school officers are not tolled by filings with the EEOC"); *Ayazi v. New York City Dep't of Educ.*, No. 08-CV-2456, 2012 WL 4503257, at *8 (E.D.N.Y. Sept. 28, 2012) ("However, Ayazi is advised that the statute of limitations for claims against a school district is

---

schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system." N.Y. Educ. Law § 2(13). In addition, although not dispositive, where an individual holds a district-wide office, such a finding militates in favor of a determination that the individual is a "school officer." *Compare Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 367 (W.D.N.Y. 2010) (recognizing that "although a principal is the administrative head of a particular school, such position is not a district-wide office.") *with Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 312 (E.D.N.Y. 2014) (finding that the position of "Mathematics Chairperson," a district-wide office, fell within the definition of "school officer").

one year . . . Furthermore, a plaintiff's filing of an EEOC complaint does not toll the running of the statute of limitations."); *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03 CIV. 7951, 2009 WL 3170302, at *11 (S.D.N.Y. Sept. 30, 2009) ("Even if Smith had not waived the argument that his EEOC charge tolled the statute of limitations set forth in Education Law § 3813(2–b), this Court would not be inclined in light of *Amorosi* and the clear intent of the New York legislature to limit lawsuits against school districts—to read such a provision into the statute."); *Field v. Tonawanda City Sch. Dist.*, 604 F. Supp. 2d 544, 579 n. 26 (W.D.N.Y. 2009) (same).  In light of the fact that Plaintiff commenced the instant action on July 18, 2017, any discriminatory acts arising under the NYSHRL and brought against the District, the Board, Bannon, Andrews or Budion which occurred prior to October 1, 2014 are time-barred.  *See Cincotta*, 2016 WL 4536873, at *17.

### D.    § 1983 Claims

The Court next considers Plaintiff's §1983 causes of action set forth in Counts II, III, and IV.  Am. Compl. ¶¶ 167-217.  Although the Amended Complaint mistakenly characterizes these claims as arising under 29 U.S.C. § 1983, the Court construes these claims as arising under 42 U.S.C. § 1983, the operative federal statute for any civil action for deprivation of rights.  Further, although Plaintiff fails to expressly identify each cause of action, the Court construes the Amended Complaint to set forth claims for violation of equal protection under the Fourteenth Amendment to the U.S. Constitution, Am. Compl. ¶¶ 167-94, 214-17, and violation of due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, *see id.* ¶¶ 195-213.  The Court also construes Count VII as setting forth a *Monell* claim against the District and Board.  *Id.* ¶¶ 238-42.   The Court considers each claim in turn below.

### 1.    *Disability Discrimination and the Equal Protection Clause*

Defendants argue that insofar as Plaintiff is alleging a violation of her Fourteenth Amendment equal protection right, her claim must fail as a matter of law because (1) a claim of disability discrimination in violation of the Equal Protection Clause premised upon substantive rights provided by the ADA is not actionable, and (2) the Equal Protection Clause does not apply to claims brought by public employees under a "class of one theory." *See* Defs.' Mem. at 13. Plaintiff argues that she is permitted to bring claims under the Equal Protection Clause to the extent she has been treated differently from similarly situated individuals. She further contends she had sufficiently alleged that Defendants prevented her from returning to work in derogation of her constitutional rights. *See* Pl.'s Opp'n at 23-24.

As an initial matter, it is well-settled that a plaintiff asserting discrimination claims under a federal statute may bring a concurrent §1983 action, such as an alleged denial of equal protection, "so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Gierlinger v. N.Y. State Police,* 15 F.3d 32, 34 (2d Cir. 1994). On that basis, for example, even though a disability discrimination claim (such as is brought here) could be brought under the ADA, it also can be asserted under § 1983. However, "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004), *superseded in part on other grounds by* Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071. As relevant here, "freedom from discrimination on the basis of disability is a right secured by statute, *see* ADA, 42 U.S.C. §§ 12031 *et seq.,* not by the Constitution." *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014) (citing *Fierro v. N.Y.C. Dep't of Educ.,* 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014)); *see Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356,

368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord O'Leary v. Town of Huntington,* No. 11 Civ. 3754, 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012).

Therefore, to the extent Plaintiff's claim of disability discrimination is premised upon the substantive rights provided by the ADA, the claim is not actionable under § 1983.  *See, e.g., Lener*, 55 F. Supp. 3d at 281; *Fierro,* 994 F. Supp. 2d at 590; *EC ex rel. RC v. Cnty. of Suffolk,* 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) (holding that plaintiff's ADA claim against County defendants could not be brought under §1983 because the ADA has its own structure for private enforcement); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.,* No. 07 Civ. 8828, 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss § 1983 claim and stating that "[t]he broad discriminatory claims alleged by [p]laintiffs are, at best, the type of alleged discrimination that . . . the ADA [is] designed to protect against, not the Equal Protection Clause" (internal quotation marks omitted)).  Therefore, to the extent Plaintiff's § 1983 claims are based upon rights provided by the ADA, they should be dismissed.

A plaintiff may, however, bring a § 1983 claim premised upon substantive rights distinct from an employment discrimination statute like the ADA.  *Lener*, 55 F. Supp. 3d at 281 (citing *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993)).  Here, Plaintiff alleges that Defendants treated her differently from other similarly situated individuals in violation of her right to equal protection.  Significantly, "disability and/or perceived disability are not suspect or quasi-suspect classifications." *Lener*, 55 F. Supp. 3d at 281.  Nevertheless, "courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id*. (citation omitted).

48

Although it is not clear here whether Plaintiff styles her § 1983 claims as a "selective enforcement" equal protection claim, or a "class of one claim," the Court considers each in turn below.

### a.     Class of One Theory

"In a 'class of one' case, [a] plaintiff uses 'the existence of persons in similar circumstances who received more favorable treatment . . . to provide an inference that [she] was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose — whether personal or otherwise — is all but certain.'" *Lener*, 55 F. Supp. 3d at 282 (quoting *Prestopnik v. Whelan,* 249 Fed.Appx. 210, 212–13 (2d Cir. 2007)).  In order to adequately allege a class of one equal protection claim, a plaintiff must allege "an extremely high degree of similarity" between the plaintiff (the class of one) and "alleged comparators." *Id.*

However, as relevant here, the Equal Protection Clause does not apply to public employees, like Plaintiff, asserting a "class of one theory."  *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 603 (2008) (deciding that "the class-of-one theory of equal protection has no application in the public employment context"); *Appel v. Spiridon,* 531 F.3d 138, 139–40 (2d Cir. 2008) (following *Engquist,* "the Equal Protection Clause does not apply to a public employee asserting a violation of the [Equal Protection] Clause based on a 'class of one' theory of liability"); *see also Ponterio v. Kaye,* 328 Fed. App'x. 671, 672–73 (2d Cir. 2009); *Fierro,* 994 F. Supp. 2d at 591–92.  Accordingly, Plaintiff's Equal Protection Claim fails as a matter of law to the extent it is brought under a "class of one" theory.

The Court notes that even if Plaintiff could bring a "class of one" claim, Plaintiff has failed to plead the extremely high degree of similarity between herself and her comparators

necessary to support an inference that Plaintiff was impermissibly singled out.  For pleading purposes, the "extremely high degree of similarity," is the functional equivalent of alleging that a plaintiff and comparator are "*prima facie* identical."  *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).  Here, Plaintiff has not alleged anything with respect to any comparator.  The closest the Amended Complaint comes is the conclusory characterization that other District employees were "similarly situated"  Am. Compl. ¶¶ 37, 54.  Characterizing purported comparators as "similarly situated" is decidedly insufficient in detail to permit application of a "class of one claim."  *See Fierro*, 994 F. Supp. 2d at 592 (opining that even if plaintiff could bring a "class of one" claim, it would fail since plaintiff alleged a single detail regarding purported comparators—that they could not walk).  Here, Plaintiff does not put forth any details whatsoever regarding the purportedly "similarly situated" comparators.  Plaintiff therefore fails to allege the existence of sufficient comparators and her class of one claim fails.

### b.     Selective Enforcement Theory

"To prevail on a selective enforcement claim, a plaintiff must show (1) that she was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Lener*, 55 F. Supp. 3d at 283 (internal quotations and citations omitted).  Selective enforcement is a "murky corner of equal protection law in which there are surprisingly few cases." *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir. 2000) (internal quotations omitted).

Courts in this Circuit are divided on whether selective enforcement claims are available in the public employment context post-*Engquist. See Gentile,* 769 F. Supp. 2d 573, 579, n. 9

(S.D.N.Y. 2011) (collecting cases); *see also Sharpe,* 2013 WL 2356063, at \*4 n. 6 (noting that "the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of *Engquist*" and that "[t]he Second Circuit has not resolved this confusion"). Even assuming that such a claim is cognizable, the Amended Complaint plainly fails to state a claim for selective enforcement since the Amended Complaint contains no factual allegations which plausibly suggest that Plaintiff was similarly situated to other District employees "in all material respects." *Sharpe*, 2013 WL 2356063, at \*4.[10] Indeed, as noted, Plaintiff fails make any factual allegations whatsoever concerning any "similarly situated" District employees.

Therefore, for the foregoing reasons, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's equal protection claim be GRANTED and the claim be dismissed.

### 2. *Procedural Due Process Claim*

Defendants maintain that it is unclear from the Amended Complaint what procedures, if any, Plaintiff alleges she was denied, or how Plaintiff suffered any deprivation of life, liberty or property. Defs.' Mem. at 15. Defendants argue that any claim for procedural due process must fail since Plaintiff was not terminated, nor were any personnel decisions made in connection with her employment. *Id.* at 16. Plaintiff's refusal to return to work does not give rise to any constitutional violation according to the Defendants. *Id.* Plaintiff argues that her right to due process was violated to the extent she was denied an interactive process. *See* Pl.'s Opp'n at 29-30.

---

[10]   There is some disagreement as to the meaning of "similarly situated" in the context of selective enforcement claims. *See Gentile,* 769 F. Supp. 2d at 580. The Court need not take sides in this disagreement because, even applying the less stringent standard, Plaintiff has failed to plead a claim

Reading the Amended Complaint in a light most favorable to Plaintiff, the Court construes two possible bases for Plaintiff's procedural due process claim:  (1) constructive discharge and (2) denial of the interactive process.  Am. Compl. ¶¶ 195-213.  The Court addresses each in turn.

### a.        Constructive Discharge

As stated by the Supreme Court,

> [u]nder the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign? *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004)

The constructive discharge standard is "demanding," *Miller v. Praxair, Inc.,* 408 Fed. App'x. 408, 410 (2d Cir. 2010) and requires a more robust showing than that required by a hostile [work] environment claim," *Mandel v. Champion Int'l Corp.,* 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005).

The Court has already found that Plaintiff has failed to state a claim for hostile work environment.  Logically then, Plaintiff has necessarily failed to state the more demanding claim for constructive discharge.  The factual allegations do not show that Plaintiff's working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign, especially since Plaintiff has not alleged any threatening or sufficiently severe acts.  Thus, Plaintiff has failed to allege that her due process right as guaranteed by the Fourteenth Amendment was violated.  *Rasulo v. Hartnett*, 831 F. Supp. 2d 714, 720 (S.D.N.Y.

2011) (holding that plaintiff failed to state a claim for violation of due process where he could not plead constructive discharge).[11]

### b.      Interactive Process

The issue is whether Plaintiff states a procedural due process claim against Defendants for refusing to engage in the interactive process.  Am. Compl. ¶¶ 193, 203-05.  Plaintiff argues that Defendants were required to engage in the interactive process and, by failing to do so, violated her right to procedural [and substantive] due process.  *See* Pl.'s Opp'n at 29-30.

The Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995)).

At least one court in this District has previously considered whether a plaintiff adequately stated a § 1983 procedural due process claim based on an employer's failure to engage in the interactive process.  *Laface*, 349 F. Supp. 3d at 157.  In *Laface*, the court: (1) construed "engagement in the interactive process" as a potential property right asserted by the plaintiff; (2) summarized the law concerning property rights arising from public employment; and (3) held that the plaintiff had "failed to identify any legal foundation for any theoretical entitlement to his

---

[11]     Although Plaintiff set forth her procedural due process claim under the Fifth Amendment, the Court construes the claim under the Fourteenth Amendment since the Fifth Amendment protects against due process violations committed by "the federal government and federal employees, and does not regulate the activities of state officials or state actors." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011); *see also Kramer v. New York City Bd. of Educ.*, 715 F. Supp. 2d 335, 341-42 (E.D.N.Y. 2010) (treating claims against a state actor asserted under the Fifth Amendment as claims arising under the Fourteenth Amendment).

[] purported property right, an interactive process regarding accommodations." *Id.* at 159.  The court noted that "[w]hile the complaint continuously references an 'interactive process' with the Defendants, [the plaintiff] fails to explain what this process entails or whether it has any basis in law, regulation or procedure." *Id.*  On those grounds, the court found the plaintiff had failed to adequately plead that he possessed a liberty or property interest protected by the constitution or federal statutes.  *Id.*  In addition, the court reasoned that since Plaintiff had failed to describe the requirements of the interactive process he claimed he was denied, the court could not determine whether the complaint had adequately alleged the defendant's noncompliance.  *Id.* ("Plaintiff fails to explain why the Defendants' actions did not entail an "interactive process" as contemplated by the ADA.  Rather, the complaint is full of instances of an 'interactive process' between the parties.").

The factual allegations in this action similarly fail to offer any insight into the interactive process Plaintiff alleges she was denied -- statutory or otherwise.  Although the Amended Complaint is filled with allegations concerning Defendants' failure to engage in the "interactive process," Plaintiff does not allege what the process was, what it required, or its statutory underpinnings.  *See generally* Am. Compl.  On that basis, Plaintiff has failed to identify any "legal foundation for any theoretical entitlement to [her] purported property right." *Laface,* 349 F. Supp. 3d at 157.

In any event, although Plaintiff alleges that Defendants failed to engage in the interactive process, she states, among other things, that:  (1) the District provided her with her requested reasonable accommodation every year since she first requested it, up to and including the 2015-2016 school year, Am. Compl. ¶ 68; (2) the District requested medical documentation in support of her disabilities on an annual basis, *id.* ¶ 28; and (3) in or around April of 2017, while Plaintiff

54

was recovering from her fall, District counsel reached out to Plaintiff's attorney concerning Plaintiff's medical clearance, *id.* ¶ 89.

Notably, even if Plaintiff had alleged a constitutionally protected property interest, she cannot demonstrate deprivation of any procedural protections since she was able to bring an Article 78 proceeding -- an adequate post-deprivation remedy for procedural due process -- prior to bringing this action in federal Court.  *See Laface*, 349 F. Supp. 3d at 160-61 (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)).  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Id.*  "In the latter case, the due process required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Laface*, 349 F. Supp. 3d at 160 (quoting *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) (internal quotation marks omitted)).  In New York State, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy," where "constitutional issues can be decided." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881; *see also Nenninger v. Vill. of Port Jefferson*, 509 Fed. App'x 36, 39 n.2 (2d Cir. 2013) ("[T]he claim fails in any event because [the plaintiff] was free to bring an Article 78 mandamus proceeding in New York State Court.").

Here, the alleged refusal to engage in an "interactive process" is a random, unauthorized act by the Defendants. *Laface*, 349 F. Supp. 3d at 161 (categorizing defendants' alleged refusal to engage in an "interactive process" as a random unauthorized act).  Significantly, Plaintiff has not alleged that she utilized an Article 78 proceeding -- or any other post-deprivation hearing for that matter.  *See generally* Am. Compl.  Because she did not plead that she utilized an Article 78

proceeding, or any other post-deprivation hearing, Plaintiff is precluded from now seeking such relief in federal court.  *See Laface*, 349 F. Supp. 3d at 161.

For these reasons, Plaintiff's claim for violation of her right to procedural due process fails.  The Court respectfully recommends that Defendants' motion to dismiss Plaintiff's § 1983 procedural due process claim be GRANTED.

### 3.   *Substantive Due Process Claim*

Plaintiff's claim for a violation of her substantive due process rights also fails.  "To state a substantive due process claim, a plaintiff must allege that:  (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary."  *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (quoting *JG & PG ex rel. JGIII v. Card*, No. 08–CV–5668, 2009 WL 2986640, at *5 (S.D.N.Y. Sept. 17, 2009)).  "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Velez v. Levy,* 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Even assuming all of the facts in the Amended Complaint to be true, the conduct alleged was not so shocking or oppressive as to give rise to a claim for substantive due process.  *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004).  "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'"  *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1996) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)).  As one court has noted, "Government actions that have risen

to the level of conscious-shocking behavior typically meet a high bar." *Platt v. Inc. Vill. of Southampton*, No. 08CV2953, 2009 WL 10709176, at *5 (E.D.N.Y. Sept. 25, 2009), *aff'd*, 391 Fed. App'x 62 (2d Cir. 2010) (citation omitted); *see, e.g., Riggins v. Nevada*, 504 U.S. 127, 135 (1992) (forced administration of antipsychotic drugs absent overriding justification and determination of medical appropriateness); *Rochin v. California*, 342 U.S. 165, 172 (1952) (forcibly pumping a suspect's stomach); *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) (gym teacher choking, punching in face, and ramming student's head into bleachers and against metal fuse box).

In this case, Plaintiff's contentions, namely, that (1) she was provided a single room in which to teach and prepare from 1998-2016 and then asked to use two adjacent rooms, (2) she was observed four times instead of two times and had one unsatisfactory review expunged from her record, and (3) she was assigned a disproportionate number of special needs students – plainly do not satisfy the high bar required of a substantive due process claim. Considering the facts in a light most favorable to Plaintiff, the allegations concerning Defendants' conduct do not shock the conscience.

Moreover, the Court notes that Plaintiff has failed to offer any meaningful argument whatsoever in response to Defendant's motion to dismiss her substantive due process claim. "District courts in this circuit have found that [a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Youmans v. Schiro*, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013). *See, e.g., Lomonoco v. Saint Anne Inst.*, No. 1:15-CV-1163, 2018 WL 2324051, at *12 (N.D.N.Y. May 22, 2018) ("[T]he Court may, and does, construe the failure to respond to an opposing party's arguments as an effective abandonment of the claim."); *Javed v. Medgar Evers Coll. of the City*

*Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017)

(dismissing a series of claims for failure to respond to defendants' arguments), *aff'd sub nom.*

*Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 Fed. App'x 73 (2d Cir. 2018), *as*

*amended* (June 12, 2018); *Hou v. Lam*, No. 3:16-CV-01592, 2017 WL 4316394, at *3

(D. Conn. Sept. 27, 2017) (dismissing Connecticut state law claim due to the plaintiff's failure to

respond to the defendants' arguments); *Robinson v. Fischer*, No. 09 CIV. 8882, 2010 WL

5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim

abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their

opposition papers defendants' arguments for dismissing such a claim." (citing *Lipton v. Cty. of*

*Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a

claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim

should be dismissed.").

      Here, in opposition to Defendants' motion, Plaintiff asserts — in conclusory fashion —

that "the interactive process constitutes both a procedural and substantive due process right that

defendants willfully violated."  Pl.'s Opp'n at 30.  Plaintiff makes no effort whatsoever to

respond to Defendants' argument that Plaintiff has altogether failed to allege any acts so

extreme, egregious, or offensive to human dignity, as to shock the contemporary conscience.

Indeed, Plaintiff's opposition is completely preoccupied with Defendants' refusal to engage in

the interactive process as a procedural violation.  *See id.*  Based on the applicable case law, the

Court finds that Plaintiff's substantive due process claim has been abandoned.

      For the foregoing reasons, the Court respectfully recommends that Defendant's motion to

dismiss Plaintiff's substantive due process claims be GRANTED and the claim be dismissed.

### 4. *Monell Liability*

With regard to any *Monell* claim, since the Court has found that Plaintiff failed to allege any constitutional violations, the Court need not engage in an analysis concerning whether alleged constitutional violations arose out of a governmental custom, policy or practice. Therefore, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's *Monell* claim be GRANTED.

### F. Violation of the New York State Constitution

Plaintiff asserts that Defendants violated her rights under Article I, Sections 8 and 11 of the New York Constitution by violating her right to free speech and depriving her of equal protection of the laws of the State. Am. Compl. ¶¶ 259-66. "No explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution." *Wahad v. F.B.I.*, 994 F. Supp. 237, 238 (S.D.N.Y. 1998) (citing *Brown v. State of New York,* 89 N.Y.2d 172, 186 (1996)). Moreover, courts in this Circuit have held that no implied right of action exists "for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution."[12] *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (citing *Allen v. Antal*, 665 Fed. App'x 9, 13 (2d Cir. 2016) (summary order); *Othman v. City of New York*, No. 13-CV-4771, 2018 WL 1701930, at *17 (E.D.N.Y. Mar. 31, 2018); *Coleman v.*

---

[12]    While Judge Garaufis in *Alwan* recognized the consistency with which courts in this Circuit have held that no private right of action exists under the New York Constitution, he declined to apply the logic underpinning these decisions where the state constitutional claims were premised on a theory of *respondeat superior* because "[a] plaintiff seeking to recover on the basis of respondeat superior simply does not come within the terms of [§] 1983." *Alwan*, 311 F. Supp. 3d at 587 (quoting *Brown*, 89 N.Y.2d at 194). This limitation does not bear on the instant matter, since Plaintiff has not indicated that any of her claims are premised on a theory of *respondeat superior*.

*Annucci*, No. 17-CV-5031, 2017 WL 6622544, at \*4 n.9 (E.D.N.Y. Dec. 28, 2017); *Sullivan v. Metro. Transit Auth. Police Dep't, No.* 13-CV-7677, 2017 WL 4326058, at \*10 (S.D.N.Y. Sept. 13, 2017)).

In line with these cases, the Court finds that Plaintiff's attempt to assert claims under Article I, Sections 8 and 11 of the New York Constitution is not viable because Plaintiff lacks a private right of action.  The Court points out that Plaintiff also cites Article I Section 14 of the New York State Constitution which concerns the force and effect of the laws of "the colony of New York" and "the convention of the State of New York," both of which appear to be altogether inapplicable to the instant action.  Am. Compl. ¶265.

Accordingly, the Court respectfully recommends that Defendants' motions to dismiss the tenth cause of action in the Amended Complaint be GRANTED and that this cause of action be dismissed.

IV.  **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be GRANTED, in PART, and DENIED, in PART.  Specifically, the Court recommends as follows:

(1) With respect to Plaintiff's claims for disability discrimination under the ADA, as set forth in Count I of the Amended Complaint, the Court respectfully recommends that (i) Defendant's motion to dismiss Plaintiff's hostile work environment claim be GRANTED and the claim be dismissed; (ii) Defendants' motions to dismiss Plaintiff's discrimination, retaliation, and failure to accommodate claims be DENIED, except that any such claims concerning acts which occurred before January 22, 2016 are time-barred and should be dismissed.

(2) With respect to Plaintiff's NYSHRL claims as against the District, as set forth in Count V of the Amended Complaint, the Court respectfully recommends that:  (i) Defendants' motion to dismiss any hostile work environment claim arising under the NYSHRL be GRANTED and that any such claim be dismissed; (ii) Defendants' motion to dismiss any disability discrimination, retaliation, and failure to accommodate under the NYSHRL be DENIED, except that any such claims

60

concerning acts which occurred before October 1, 2014 are time-barred and should be dismissed.

(3) With respect to Plaintiff's aiding and abetting NYSHRL claims, as set forth in Count VI of the Amended Complaint, the Court respectfully recommends that (i) Defendants' motion to dismiss claims as against defendants Bannon, Andrews, and Budion, be DENIED, except that any claims concerning acts which occurred before October 1, 2014 are time-barred and should be dismissed; and (ii) Defendants' motion to dismiss claims as against Agosta be GRANTED and any such claims be dismissed.

(4) With respect to Plaintiff's § 1983 and *Monell* claims, as set forth in Counts II, III, IV, and VII of the Amended Complaint, the Court respectfully recommends that: (i) Defendants' motions to dismiss Plaintiff's equal protection and procedural due process claims be GRANTED and the claims be dismissed; (ii) Defendants' motion to dismiss Plaintiff's substantive due process claims be GRANTED and the claims be dismissed; and (iii) Defendants' motion to dismiss Plaintiff's *Monell* claim be GRANTED and the claim be dismissed.

(5) With respect to Plaintiff's claims brought under the New York State Constitution as set forth in Count X of the Amended Complaint, the Court respectfully recommend that Defendants' motion to dismiss be GRANTED and the claims be dismissed.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED:**

Dated:  Central Islip, New York
        March 9, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate