UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROSARY BERTUZZI,

                         Plaintiff,

        -against-

COPIAGUE UNION FREE SCHOOL DISTRICT, BOARD
OF EDUCATION OF COPIAGUE UNION FREE SCHOOL
DISTRICT, DR. KATHLEEN BANNON, TODD ANDREWS
MICHELLE BUDION *Individually, and as Aiders and Abettors,*

                        Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
17-CV-4256 (JS) (ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court is the motion of the plaintiff, Rosary Bertuzzi (Bertuzzi"), seeking leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2) and 16(b). For the reasons set forth below, the undersigned respectfully recommends that Bertuzzi's motion be denied.

## BACKGROUND

      The Court assumes the parties' familiarity with the factual background of this case and will, therefore, only recite the relevant procedural history.

      Bertuzzi commenced this action against the Copiague Union Free School District (the "District"), the Board of Education of Copiague Union Free School District (the "Board"), Superintendent Kathleen Bannon ("Superintendent Bannon"), Assistant Superintendent for Human Resources Todd Andrews ("Assistant Superintendent Andrews") and District Coordinator of Foreign Language Michelle Budion ("Budion") (collectively, the "defendants") on July 18, 2017, claiming violations of her constitutional, statutory and common law rights, including employment discrimination. ECF No. 1. On December 27, 2017, the defendants filed

a fully briefed motion to dismiss the complaint with the Court. Almost four months later, with the motion to dismiss still pending before the Court, Bertuzzi sought leave to file an amended complaint. ECF Nos. 20-1. On August 9, 2018, Magistrate Judge Tomlinson held a conference with the parties during which they agreed to enter into a stipulation deeming the motion to dismiss moot and permitting the filing of the proposed amended complaint. ECF No. 24. Accordingly, on August 16, 2018, Bertuzzi filed an amended complaint, which is now the operative pleading, setting forth numerous federal and state causes of action, namely, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Due Process Clause of the Fifth and Fourteenth Amendments; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq*.; and the New York State Constitution. ECF No. 26.

Bertuzzi's amended complaint includes a hostile work environment and constructive discharge claim. To this end, Bertuzzi alleges, inter alia, that:

> 105. Almost immediately upon . . . Bertuzzi's return to work, in September 2017, and in retaliation for pursuing her case, defendants continued in their campaign of . . . harassment . . ..

> \*          \*          \*

> 109. At the commencement of the 2017-2018 school year, defendants issued to . . . Bertuzzi[] a new schedule of assigned classes.

> 110. . . . Bertuzzi' s new schedule requires that plaintiff move to a different classroom every single period of the day.

> \*          \*          \*

> 113. Upon information and belief, there are many similarly situated nondisabled teachers in the District who have been permitted to teach all of their teaching periods in a single classroom.

> 114. Teachers who are permitted to teach all of their teaching periods in a single classroom are able to store all of their supplies and materials in that

classroom so as to avoid carrying materials every day and between periods to multiple or different classrooms.

115. . . . Bertuzzi provided the defendant District with medical documentation from her treating medical professionals prior to the commencement of the 2017-2018 school year directing that her disabilities require that she receive a reasonable accommodation in the form of a single classroom to teach and prepare her lessons.

116. Despite having provided the identical accommodation in one or more prior school years, defendants have refused to provide . . . Bertuzzi with the aforementioned reasonable accommodation prescribed by her treating medical professionals for the 2016-17 and 2017-18 school years, and said refusal has continued to [the] present.

117. The schedule plaintiff was assigned by defendant for the 2017-2018 school year is as follows:

1st period room 108
2nd period move to room 102
3rd period move to LOTE office
4th period move to room 108
5th period move to LOTE office
6th period move to room 102
7th period move to room 107
8th period move to room 102
9th period move to LOTE office

118. It is completely unnecessary for the defendant District to require plaintiff to move between rooms every single period of every school day for the entire school year.

119. Upon information and belief, there are many ways in which the defendants could have limited . . . Bertuzzi's movement between rooms throughout her schedule in order to provide her an accommodation for her disabilities.

120. It is overwhelmingly apparent that the defendants took affirmative steps to ensure that . . . Bertuzzi would have to from room to room as much as possible.

121. Defendants failed to engage in any sort of interactive process or dialogue whatsoever with plaintiff or her counsel regarding her need for accommodation.

3

122. It is abundantly evident that the defendants knowingly, intentionally, and/or willfully created a schedule for . . . Bertuzzi with the motive of exacerbating her injuries as part and parcel of their concerted effort to constructively discharge plaintiff.

*   *   *

146. Since plaintiff filed her initial Verified Complaint, and for the 2017-18 school year, defendants have assigned to plaintiff a work schedule which requires that she teach and/or prepare her lessons in a different classroom each of the nine (9) periods throughout the day. Therefore, defendants have directed that, despite plaintiffs known disability, plaintiff must move between classrooms 9 times throughout the day, each time, carrying her heavy and voluminous teaching materials between classrooms.

147. Notwithstanding the exacerbation of . . Bertuzzi's disabilities, plaintiff continued to perform her job duties in a satisfactory manner without accommodation.

148. By letter dated February 19, 2018, . . . Bertuzzi's treating spinal specialist, Laurence E. Mermelstein, M.D., noticed defendants that, as a result of the exacerbation of her disabilities, . . Bertuzzi would have to miss work "because the workplace is ignoring the recommendation of this office. . .."

149. As predicted by plaintiff[']s treating medical professionals in the documentation previously provided to [the] District, defendants' acts against . . . Bertuzzi have consequently led to the severe exacerbation of her disability.

150. Prior to the commencement of the 2017-2018 school year, plaintiff had no intention of retiring at the conclusion of the school year.

151. Plaintiff wanted nothing more than to be permitted to continue her work as a foreign language teacher, working with reasonable accommodation, in a single classroom, in a hostile-free work environment.

152. Since . . . Bertuzzi filed her initial Verified Complaint, defendants have ramped up their efforts to constructively discharge plaintiff, that is, force her to retire or resign her employment, effectively ending her teaching career.

153. For the 2017-18 school year, defendants assigned to . . . Bertuzzi a schedule that required her to move between rooms each and every period throughout the work day, notwithstanding the fact that there are a significant number of other similarly situated nondisabled teachers who teach in a single classroom, including similarly situated nondisabled foreign language teachers.

>154.  In the 2016-17 and 2017-18 school years, defendants have assigned plaintiff a disproportionate number of remedial, delinquent, and/or special needs students relative to other similarly situated nondisabled foreign language teachers in order to make her job as difficult as possible and set her up to fail by targeting her with a disproportionate number of evaluations and/or observations.
>
>155.  During the 2017-18 school year, defendants have subjected plaintiff to overtly hostile and/or aggressive harassment and retaliation, actively attempting to undermine her authority as a teacher in front of her students and peers.
>
>156.  During the 2017-18 school year defendants continue to target . . . Bertuzzi with observations and evaluations her lessons.  In doing so, defendants continue to subject plaintiff to disparate treatment insofar as defendants apply performance standards differently to plaintiff than other similarly situated nondisabled teachers, in an effort to degrade and harass plaintiff due to her disability, and in retaliation for plaintiffs repeated requests for accommodation, and for filing this lawsuit.
>
>157.  In order to create pretexts designed to force . . . Bertuzzi to retire or resign her employment with the District, defendants disparately applied performance standards to plaintiff as compared to similarly situated non-disabled teachers.

ECF No. 26.

On October 29, 2018, the defendants filed a fully briefed motion to dismiss the amended complaint.  ECF Nos. 30-7.  The following day, District Judge Feuerstein referred the defendants' motion to Magistrate Judge Tomlinson for a report and recommendation.  On March 9, 2020, Magistrate Judge Tomlinson issued her report, recommending dismissal of, among other things, Bertuzzi's hostile work environment and constructive discharge claims.  ECF No. 38. Specifically, she found:

>Here, Plaintiff contends that Defendants' various unlawful acts -- including repeatedly ignoring Plaintiff's doctors' statements, observing and evaluating Plaintiff more frequently than other non-disabled teachers, assigning Plaintiff a disproportionate number of remedial and special needs students, and otherwise harassing and bullying Plaintiff -- rendered her workplace increasingly intolerable and hostile to such an extent as to alter the terms and conditions of her employment.  *See* Pl.'s' Opp'n at 20-21.  The factual allegations

5

concerning Plaintiff's hostile work environment claim state that: (1) "[e]ach year that the district granted plaintiff's request for reasonable accommodation, defendants would invariably harass [her] . . . so as to render her . . . work environment increasingly hostile in an effort to constructively discharge her," [Am. Compl.] ¶ 34; and (2) the District's "deviation from [its] policy regarding evaluations . . . was done purposefully . . . [to] create a hostile workplace," *id.* ¶ 53. In addition, Plaintiff claims generally that Defendants' "continuous and ongoing unlawful discrimination, retaliation and pervasive harassment," *id.* ¶¶ 164-66, rendered her workplace hostile, including being reprimanded in front of her class, *id.* ¶¶ 131-34, and dismissed from a teachers' conference, *id.* ¶¶ 98-100.

Practically speaking, Plaintiff contends that the conditions of her employment were altered for the following reasons: (1) the District annually denied her requested reasonable accommodation in the first, acquiescing only after the submission of medical documentation and the threat of legal action, *id*. ¶¶ 28-29; (2) the District altogether denied her requested reasonable accommodation beginning in the 2016-2017 school year, *id.* ¶¶ 39-40, 57-58, 116, 121; (3) the District deviated from its teacher evaluation/observation policy and evaluated/observed Plaintiff four times, instead of two times, rating Plaintiff ineffective on one occasion, *id.* ¶¶ 41-49; (4) Plaintiff was assigned a disproportionate number of special needs students, increasing Plaintiff's workload, *id.* ¶ 36; (5) Plaintiff was assigned a teaching schedule that required excessive movement throughout the day, *id*. ¶¶ 59-60; 109-10; and (6) Plaintiff was otherwise bullied and harassed, including being told that she should not have appeared at a teachers' conference in May 2016 and being reprimanded in October 2017 in front of her class, *id.* ¶¶129-34.

Although Plaintiff's complaints may be sufficient to make out claims for discrimination and retaliation, the factual allegations do not sufficiently allege conduct which is so objectively severe or pervasive as to alter the conditions of Plaintiff's employment.

\*   \*   \*

Here, Plaintiff alleges episodic acts which were not physically threatening or sufficiently severe or pervasive. Indeed, Plaintiff's chief complaints – that she was denied a reasonable accommodation, assigned a disproportionate number of special needs students, and evaluated more than other non-disabled teachers – are not sufficient to plead a hostile work environment, especially since Plaintiff does not dispute that Defendants either granted Plaintiff's requested reasonable accommodation or offered an alternative accommodation. Further, Plaintiff concedes that she was evaluated only two times more than non-disabled teachers, and her sole ineffective rating was ultimately expunged. Am. Compl. ¶¶ 22, 47, 51, 68; see also Pl.'s Mem.

6

ECF No. 38.

Bertuzzi objected to the report, arguing that Magistrate Judge Tomlinson erred in recommending dismissal of the hostile work environment claim. ECF No. 45. Specifically, Bertuzzi claimed that Magistrate Judge Tomlinson impermissibly assessed issues of fact, ignored "critical and necessary facts" that she was subjected to harassment that was physically threatening, and greatly overstated the level of severity or pervasiveness necessary to defeat a motion to dismiss. *Id.* Notwithstanding her objections, District Judge Feuerstein found no clear error and adopted the recommendation noting that Bertuzzi's objections were simply restatements of the arguments raised in her opposition papers. ECF No. 48. Notably, in doing so, the Court overruled Bertuzzi's objections to the extent she argued that the failure to accommodate her disability led her to experience fear of physical harm while she performed her work. *Id.*

On July 30, 2020, the defendants filed their answer to the remaining claims in the amended complaint and, between July 2020 and July 2021, the parties conducted discovery pursuant to a number of scheduling orders issued by the Court. *See* ECF Nos. 51, 59. The September 2020 scheduling order included a deadline to seek leave to amend the pleadings or join additional parties. ECF No. 59. On the day before that deadline was set to expire, Bertuzzi requested, and was granted, an extension to January 18, 2021. *See* ECF No. 57. However, she failed to seek leave to amend by that date. In fact, Bertuzzi did not file a motion to amend until July 22, 2021. ECF No. 84. Her July motion was immediately rejected by the Court. Specifically, Magistrate Judge Tomlinson held:

> Plaintiff's letter motion to amend is rejected for the following reasons: (1) the motion was filed in contravention of the Court's Individual Rules and the directives issued at the Telephone Status Conference on September 29, 2020 because it was not filed as a formal motion on notice nor did counsel submit a

7

> briefing schedule to the Court prior to the filing of this motion; and (2) the deadline to make a formal motion under the Federal Rules to add parties or amend the pleadings was December 1, 2020 and counsel does not address Federal Rule 16(b) in this letter. Moreover, as an alternative form of relief, Plaintiff requests reconsideration of the dismissal of her claims for hostile work environment and for constructive discharge. A motion to reconsider the dismissal of those claims must be addressed to Judge Seybert.

Accordingly, Bertuzzi filed an amended motion, the motion currently before the Court, on August 17, 2021. ECF No. 90.

Bertuzzi seeks to reassert her claim for hostile work environment and constructive discharge. In support of her motion, she argues that new facts and evidence uncovered through litigation support a finding that the "defendants purposefully and maliciously used their control over her schedule and knowledge of her disabilities to materially and substantially alter her terms and conditions of employment. Pl.'s Mem. at 3-4. Specifically, Bertuzzi refers to several master schedules, the defendants' emails, and the deposition testimony of Joseph Agosta, the principal of the High School, which she has annexed to an affidavit that is neither signed nor notarized. Bertuzzi claims that these documents reveal that the allegations in her amended complaint "were exemplary of an extended and consistent pattern and practice of acute harassment and disparate treatment (e.g., being assigned a disproportionate number of special needs students, targeted improper observations, contractual violations, bullying, etc.)" and were "but a single facet in a larger, multi-faceted scheme to create a hostile work environment and force me to retire." Bertuzzi Aff. ¶ 6. Bertuzzi, therefore, claims that '[t]o the extent [she] was subjected to the purposeful, pervasive exacerbation of her disabilities with concomitant severe and constant fear and pain, it would be highly prejudicial and constitute manifest injustice should she be precluded from pursuing remedies for hostile work environment and/or constructive discharge." Pl.'s Mem. at 1.

## DISCUSSION

Under Federal Rule of Civil Procedure ("Rule") 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Rule 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Rule 15(a)(2). However, as often noted by the Second Circuit, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In addition, where, as here, a Court has issued a scheduling order, pursuant to Rule 16, such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Bertuzzi, as the movant, has the burden of proving good cause. *Ahmed v. Astoria Bank*, No. 14-CV-4595, 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "A party has not acted diligently where the proposed amendment to the pleading is based on information that the party knew, or should have known, in advance of the deadline sought to be extended. *Ahmed*,

9

2015 WL 4394072, at *2 (citations and internal quotation marks omitted).   Finally, "[a]lthough diligence is the primary focus of a 'good cause' analysis, a court may, in its discretion, also consider other factors, such as whether 'allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.'"  *Id*. (quoting *Kassner v. 2nd Ave Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007)).

In this case, Bertuzzi's deadline to amend her pleading was January 18, 2021.  Bertuzzi argues that good cause is established because she lacked sufficient evidence to seek to amend her amended complaint prior to the deadline.  However, the evidence to which Bertuzzi is referring includes master schedules setting for classroom assignments, which she received one month before the deadline.  In addition, while Bertuzzi might not have possessed a copy of the master schedule, she certainly was aware of her teaching schedule as reflected by the detailed allegations in her amended complaint.  Moreover, while Principal Agosta did not appear for his deposition until May 2021, as Bertuzzi acknowledges, Principal Agosta was simply responsible for the creation of those master schedules.  Finally, according to the defendants, Bertuzzi has possessed most of the exhibits annexed to her unsigned affidavit since December 2020.  Accordingly, even if the Court were to consider the unsigned affidavit, which the undersigned recommends be stricken, nothing in Bertuzzi's submissions support a finding of good cause for the untimely motion.

More importantly, when a Court is required to assess whether to permit amendment of the pleadings after a deadline set by the Court, while the 'primary consideration is whether the moving party can demonstrate diligence, it is not the only consideration. *See Pinyuk v. Cbe Grp*., No. 17-cv-5753 (RRM)(CLP), 2019 U.S. Dist. LEXIS 71899, 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) (citing *Kassner*, 496 F. 3d at 243).  The district court, "'in the exercise

10

of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleadings at this stage of the litigation will prejudice defendants.'" *Id.* Here, the undersigned finds that permitting the amendment would certainly prejudice the defendants. Although Bertuzzi has attempted to provide the Court with documentary evidence to bolster her claim, her proposed hostile work environment/constructive discharge claims is virtually identical to the claims that were dismissed in 2020. Bertuzzi continues to argue that "she was denied a reasonable accommodation, assigned a disproportionate number of special needs students, and evaluated more than other non-disabled teachers." The Court has already ruled that these allegations are insufficient to plead a hostile work environment/constructive discharge claim. Indeed, her recharacterization of the claims as "newly alleged hostile work environment . . . designed to inflict the threat of physical pain," is simply a repackaging of a claim that was previously dismissed. Accordingly, the undersigned respectfully recommends that the motion to amend be dismissed in its entirety.

OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996). Counsel for Defendants is directed to serve a copy of this Order upon *pro se* Plaintiff forthwith and file proof of service on ECF.

Dated: Central Islip, New York
January 11, 2022

                                                                     _____/s_____
                                                                     ARLENE R. LINDSAY
                                                                     United States Magistrate Judge